HELMICK ET AL., APPELLEES, *v.* CINCINNATI WORD PROCESSING, INC. ET AL., APPELLANTS.

[Cite as Helmick *v.* Cincinnati Word Processing, Inc. (1989), 45 Ohio St. 3d 131.]

(No. 88-1122—Submitted June 7, 1989—Decided August 23, 1989.)

*Spater, Gittes & Terzian,* Frederick M. *Gittes* and John S. *Marshall,* for appellees.

*Lane, Alton & Horst,* John M. *Alton* and D. *Wesley Newhouse,* for appellants.

*Law Offices of Andrew J. Ruzicho* and *Louis A. Jacobs,* urging affirmance for *amici curiae,* Columbus Chapter of National Organization for Women and the Committee Against Sexual Harassment.

*Ohio State Legal Services Assn., Eugene R. King* and *Michael R. Smalz,* urging affirmance for *amici curiae,* David A. Gault, Regina Bergmann, Vincent Irizarry, Jr., and Ohio State Legal Services Assn.

*Sirkin, Pinales, Mezibov & Schwartz,* Marc D. *Mezibov* and *Edmund J. McKenna,* urging affirmance for *amicus curiae,* Employment Lawyers Assn.

*Kramer & Tobocman Co., L.P.A.,* and *Dennis J. Niermann,* urging affirmance for *amicus curiae,* 9 to 5, National Assn. of Working Women.

WRIGHT, J. This case requires us to resolve two issues. The first involves an issue of law. The second involves a mixture of law and fact. Appellants assert that the General Assembly abolished common-law tort actions premised upon sexual misconduct by way of preemption when it enacted R.C. Chapter 4112. Appellants also argue that the doctrine of employment at will bars Helmick's breach of contract action, said action being premised upon her discharge without just cause. We reject appellants' positions as aforesaid and affirm the court of appeals.

I

On the first point there appears to be little question that R.C. Chapter 4112 is comprehensive legislation designed to provide a wide variety of remedies for employment discrimination in its various forms. Appellees agree that claims for employment discrimination must be asserted under the aegis of R.C. Chapter 4112. The issue here is whether appellees' intentional tort claims have been preempted and abolished by the General Assembly. We hold that they have not been abolished, as there is nothing in the language or legislative history of R.C. Chapter 4112 barring the pursuit of common-law remedies for injuries arising out of sexual misconduct.

Our review of R.C. Chapter 4112 reveals only one limitation and that

provision bars any law which would be inconsistent with the remedial purpose of the chapter.[1] Appellants suggest that pursuit of common-law claims would be inconsistent with the various remedies provided by the General Assembly under the statute. However, analysis of the pertinent case law in this area belies such an assertion. Appellees accurately point out that redress under the statute differs significantly from that under the common law. First, the burden of proof for discrimination under the statute is quite different from any existing common-law tort and has its own elements and presumptions. See, generally, *Barker* v. *Scovill, Inc.* (1983), 6 Ohio St. 3d 146, 6 OBR 202, 451 N.E. 2d 807.[2] At the time the instant action was commenced, the relief provided by R.C. Chapter 4112 for sex discrimination in employment was limited to that available in equity, such as injunctive relief, reinstatement, and back pay. R.C. 4112.05(G). No provision was made for the recovery of compensatory and punitive damages available at common law. But, see, R.C. 4112.99, effective September 28, 1987.[3] We hold that allowing a plaintiff to pursue common-law remedies in lieu of the relief provided under R.C. Chapter 4112 creates no conflict and serves to supplement the limited protection and coverage of that chapter.

It must be noted that the analogous federal statute, Section 2000e, Title 42, U.S. Code, does not preempt common-law tort claims. In federal discrimination cases, the federal courts have routinely, under the doctrine of pendent jurisdiction, also heard state common-law tort claims. We note also that there is an abundance of case law dealing with facts similar to those alleged here involving an assault, intentional infliction of emotional distress and the like.[4] Moreover, our holding that R.C. Chapter 4112 does not preempt common-law tort claims keyed to sexual misconduct is supported by other jurisdictions which have dealt with the preemption issue.[5]

Appellants cite *Peterson* v. *Scott*

---

[1] R.C. 4112.08 provides in pertinent part:

"The provisions of sections 4112.01 to 4112.08 of the Revised Code, shall be construed liberally for the accomplishment of the purposes thereof and any law inconsistent with any provision hereof shall not apply. * * *"

[2] In *McDonnell Douglas Corp.* v. *Green* (1973), 411 U.S. 792, the United States Supreme Court enunciated the evidentiary standards and guidelines to be followed in race discrimination cases. This court, in *Plumbers & Steamfitters Commt.* v. *Ohio Civil Rights Comm.* (1981), 66 Ohio St. 2d 192, 20 O.O. 3d 200, 421 N.E. 2d 128, adopted those same standards and then, in *Barker, supra,* applied them to age discrimination under R.C. 4101.17.

[3] R.C. 4112.99 provides:

"Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief."

[4] See, *e.g., Phillips* v. *Smalley Maintenance Services, Inc.* (C.A. 11, 1983), 711 F. 2d 1524; *Meyer* v. *California & Hawaiian Sugar Co.* (C.A. 9, 1981), 662 F. 2d 637.

[5] See *Clay* v. *Quartet Mfg. Co.* (N.D. Ill. 1986), 644 F. Supp. 56, where the court, in applying the Illinois Human Rights Act, ruled that while the Act preempts claims of employment and other kinds of discrimination, common-law tort claims arising in an employment context such as one for an intentional infliction of emotional stress are not preempted. See, also, *Newman* v. *Dist. of Columbia* (D.C. App. 1986), 518 A. 2d 698, where the court decided that the District of Columbia Human Rights Act

*Constr. Co.* (1982), 5 Ohio App. 3d 203, 5 OBR 466, 451 N.E. 2d 1236, and *Howard* v. *State Farm Ins. Co.* (1978), · 61 Ohio App. 2d 198, 15 O.O. 3d 317, 401 N.E. 2d 462. Neither of these cases dealt with the assertion of common-law tort claims against an employer. We agree with *Peterson* that R.C. Chapter 4112 does provide the exclusive remedy for pure employment discrimination claims. *Peterson, supra,* at 205, 5 OBR at 467, 451 N.E. 2d at 1238. However, in that case the court made no ruling and expressed no opinion concerning the rights of an employee with discrimination claims to also pursue common-law claims. Likewise, the court in *Howard* did not treat the issue of whether the plaintiff had the right to pursue traditional tort claims existing independently of R.C. Chapter 4112.

R.C. Chapter 4112 was intended to add protections for victims of sexual harassment rather than reduce the protections and remedies for such conduct. While discretionary hiring practices, discriminatory promotions and discriminatory discharges are not actionable at common law absent an express contract, the express purpose of R.C. Chapter 4112 is to deter these practices and provide a remedy where none existed under state law. We agree with appellees that it would defy logic to conclude that the General Assembly intended to make it impossible for victims of sexual harassment to obtain damages when an employer's conduct constitutes a common-law tort, regardless of the motivation for such conduct.

We would repeat the axiom that an existing common-law remedy may not be extinguished by a statute except by direct enactment or necessary implication.[6] Accordingly, and for the reasons above, we hold that appellees' common-law tort actions are not preempted by R.C. Chapter 4112. As to this issue the judgment of the court of appeals is affirmed. Thus, we need not consider appellees' equal protection and due process claims.

## II

The second issue involves the scope and vitality of *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150. There is no question that, standing alone, praise with respect to job performance and discussion of future career development will not modify the

---

does not preempt the common-law rights of government workers injured by discriminatory practices. *Id.* at 702, fn. 8. That court also stated:

"* * * [W]e follow the presumption that the legislature does not intend to take away common law rights unless that purpose is clearly expressed in the statute. 'No statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express.' *Shaw* v. *North Pennsylvania R.R.,* 101 U.S. (11 Otto) 557, 565, 25 L. Ed. 892 (1879) * * *." *Newman, supra,* at 703.

Finally, see *Carsner* v. *Freightliner Corp.* (1984), 69 Ore. App. 666, 688 P. 2d 398, where the court determined that an employee's tort claim for his employer's intentional infliction of emotional distress was not preempted by the state civil rights Act.

[6] See 85 Ohio Jurisprudence 3d (1988) 394-395, Statutes, Section 362, which states: "Where a statute prescribes a remedy for a matter that is actionable at common law without excluding the common-law remedy either expressly or by necessary implication, the statutory remedy, in the absence of constitutional provision to the contrary, is regarded as merely cumulative, and either the common-law or statutory remedy may be pursued. * * *"

employment-at-will relationship.[7] However, we find something more in this particular case. Construing the evidence most favorably to Helmick, we note a facial showing that there were specific promises made to Helmick on which she relied to her detriment.

First, the record reflects interviews of Helmick by defendant Bray prior to her employment at CWP. At the time of these discussions, Helmick was interviewing with several potential employers and Bray allegedly promised Helmick job security and opportunities for advancement in consideration of her discontinuing her other interviews. These inducements allegedly led to Helmick's decision not to continue job hunting.

More importantly, in the face of Helmick's dissatisfaction with her employment environment and her renewed search for another position, CWP's vice president, defendant Theye, allegedly dissuaded Helmick from pursuing these new avenues, telling her that the home office thought she was doing a great job, that a raise had been approved, and that a career with the company was in order as long as her job performance was good. At his deposition, Theye stated: "* * * I reassured her [Helmick] that she would have a job if her performance was satisfactory." Based on this reassurance, Helmick stopped looking for other jobs and may have, though she could not recall with certainty, rejected another job offer.

A demonstration of detrimental reliance on specific promises of job security can create an exception to the employment-at-will doctrine. *Mers, supra,* paragraph three of the syllabus. In light of the foregoing, we hold that summary judgment on Helmick's breach of contract claim was inappropriate since the trial court had the responsibility to view the evidence in

---

[7] Some commentators and courts have criticized this court's strict adherence to the doctrine of employment at will as harsh. However, we held to this view under the difficult facts presented in *Fawcett* v. *G. C. Murphy & Co.* (1976), 46 Ohio St. 2d 245, 75 O.O. 2d 291, 348 N.E. 2d 144, and in *Phung* v. *Waste Management, Inc.* (1986), 23 Ohio St. 3d 100, 23 OBR 260, 491 N.E. 2d 1114. It is noteworthy that the General Assembly modified our specific ruling in *Fawcett* by amending R.C. 4101.17 to create a private cause of action for violations of that section. See 137 Ohio Laws, Part II, 3062. Similarly, the legislature quite properly reviewed the holding in *Phung* and asserted its power to make public policy by passing R.C. 4113.51 through 4113.53, which have the effect of modifying the common law.

"Ohio's new statute covers virtually all employers within the state. Under the statute, if an employee becomes aware of a violation of the law by his employer or another employee which is likely to cause a risk of physical harm, is a hazard to public safety, or is a felony, he must orally notify his supervisor and file a written report identifying and detailing the violation. If the employer does not make a good faith effort to correct its violation by the end of the following business day and notify the employee in writing of its efforts in that regard, the employee may file a written report of the violation with the appropriate public agency or official. * * * [I]f the employer violates certain Ohio laws governing air and water pollution control, the employee need not report the violation to his employer before reporting directly to a public agency or official.

"If the provisions of the act have been followed, the employee may not be discharged, suspended, deprived of any salary increases or employment benefits, transferred or reassigned, denied a promotion, or be subject to a reduction of pay or position for reporting the violation." Cincinnati Bus. Courier, June 5, 1989, at ___, col. ___.

its totality, construe it in favor of the nonmovant, and determine whether or not specific promises were made on which there was detrimental reliance. There is a genuine issue of material fact on this issue.

For the reasons aforesaid, the holding of the court of appeals is affirmed and this matter is remanded to the trial court for further proceedings.

*Judgment affirmed.*

MOYER, C.J., H. BROWN and RESNICK, JJ., concur.

SWEENEY and DOUGLAS, JJ., concur in judgment only.

HOLMES, J., concurs in part and dissents in part.

DOUGLAS, J., concurring. While I concur in the result reached in the majority opinion, it is unfortunate that the lead opinion strains mightily to avoid the fact that *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150, has in fact altered to a substantial degree the former absolutist position of the doctrine of employment-at-will in this state. It is a hopeful sign that the majority at least pays lip service to the fact that in a modern-day society, rules of employment need to be changed from those that pertained during the Industrial Revolution.

While conceding that changes have taken place in this field of the law, the majority, trying to carry water on both shoulders, unfortunately cites to *Fawcett* v. *G.C. Murphy & Co.* (1976), 46 Ohio St. 2d 245, 75 O.O. 2d 291, 348 N.E. 2d 144, and *Phung* v. *Waste Management, Inc.* (1986), 23 Ohio St. 3d 100, 23 OBR 260, 491 N.E. 2d 1114.

It is important to remind ourselves of the holdings in these two cases. The holding in *Fawcett, supra,* is that the employment-at-will doctrine is absolute in Ohio and is not limited by " '* * * principles which protect persons from gross or reckless disregard of their rights and interests, wilful, wanton or malicious acts or acts done intentionally, with insult, or in bad faith.' " *Fawcett, supra,* at 249, 75 O.O. 2d at 293-294, 348 N.E. 2d at 147. In paragraph one of the syllabus in *Phung,* this court stated that "[p]ublic policy does not require that there be an exception to the employment-at-will doctrine when an employee is discharged for reporting to his employer that it is conducting its business in violation of law. * * *" (Citation omitted.)

While in the case now before us the court applies *Mers* to a new situation, it drags along the outdated absolutist position exemplified in *Fawcett* and *Phung.* I eagerly await the time when this court tosses away the view that a party has the right to violate with malice aforethought the rights of others. Since this court does not tolerate this type of behavior in any other area of the law, we should likewise not condone gross disregard of rights of employees in the employment area.

SWEENEY, J., concurs in the foregoing opinion.

HOLMES, J., concurring in part and dissenting in part. Although I concur in the conclusion of the majority as set forth in Part I of this opinion, I am very disturbed by this majority opinion in that it unnecessarily erodes the long-standing principle of employment-at-will. The majority states the law as set forth in *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150, to the effect that a demonstration of detrimental reliance

on specific promises of job security can create an exception to the employment-at-will doctrine. However, upon the facts here, the majority misapplies the law of *Mers*.

We start with the premise that this court in *Mers* did not discard the employment-at-will doctrine, but only modified it in a limited sense. In order to present an issue regarding a wrongful discharge there must be a clear showing of a specific promise of job security, and of a detrimental reliance upon such promise. Here, the trial court, after reviewing the extensive record presented to it by way of depositions upon the motion for summary judgment, concluded that appellee Helmick failed to adduce any evidence to establish a genuine issue of fact regarding alleged representations by the defendants.

Appellee Helmick was required to respond to the motion for summary judgment with evidentiary materials establishing genuine issues of material fact regarding her claim for wrongful discharge. Civ. R. 56(E) states in part:

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Helmick had the burden of coming forward with evidence showing that there was a genuine issue for trial on the theory of wrongful discharge.

The facts in this case are distinctly different than in *Mers*. In that case, this court held that the doctrine of promissory estoppel could apply to oral at-will employment agreements if the employer should have reasonably expected its representation to be relied on by its employee, and if the employee engaged in or forbore from some action as a result of the representation. In *Mers*, the representation was the statement that the employee would be reinstated if the criminal charges were favorably resolved. This representation created a genuine issue of material fact, and this court held that summary judgment was inappropriate. On remand, the jury returned a verdict for the plaintiff, which was modified on appeal, in *Mers* v. *Dispatch Printing Co.* (1988), 39 Ohio App. 3d 99, 529 N.E. 2d 958.

Here, the trial court had all the basic facts before it concerning the alleged representations made by the defendants as well as the evidence of any alleged detrimental reliance thereon. The record reflects no evidence of substantial promises made by defendants. Helmick admitted in her deposition that defendants never made any representations regarding the exact duration of her anticipated employment, either before or during her employment. Helmick relies solely on the alleged representations of Charles Bray and Terry Theye that she was doing satisfactory work and could continue in her employment as long as her job performance was satisfactory.

Essentially, Helmick contends that affirmation of the indefinite term of her employment, coupled with general expressions of satisfaction with her job performance, somehow eliminated the employment-at-will relationship, and created a duty on the part of defendants to permanently employ her, or to terminate her only for just cause. While this and other courts in Ohio have recognized that specific promises can modify the employment-at-will relationship, no court has gone this far.

Appellee cites a number of cases

showing the tendency of courts to entertain claims of wrongful discharge where there have been specific oral representations by the employer, relied upon by the employee. Exemplary of these cases is *Helle* v. *Landmark, Inc.* (1984), 15 Ohio App. 3d 1, 15 OBR 22, 472 N.E. 2d 765. The facts in *Helle* illustrate the difference between forbearance which can serve as consideration and conduct which will not serve as consideration. In *Helle*, termination of the plaintiffs' employment appeared imminent through the closing of the business. To induce the employees to stay until the business closed, the employer made certain representations regarding severance benefits. The employees' forbearance from seeking other employment was more than what the employer might otherwise have expected under the circumstances. This is distinctly different from an employee who merely receives favorable evaluations, unspecific assurances, and vague discussions regarding opportunities for advancement. In the latter circumstance, there is no bargained-for exchange. In the former, there is.

This court has preserved the doctrine of employment-at-will for sound public policy reasons. To further these policies this court should impose standards that would require claimants to establish something more than vague statements of encouragement or general discussions of career development. This court should require plaintiffs, like Helmick, to prove representations regarding duration and security of employment that are sufficiently specific and precise that a reasonable person would conclude that the employer has committed itself to a policy other than employment-at-will; and has chosen, by such words, to follow a policy that employment would be terminated only for just cause. A lesser standard will tend to turn efforts to boost morale and improve productivity into binding obligations of employment for an indefinite period.

Further, the former employee must be required to prove that he or she took some specific action, declined some specific, identifiable and verifiable opportunity of employment, or experienced some specific loss, in order to establish reasonable reliance. Here, Helmick contends that she failed to seek employment elsewhere as a result of the alleged statements of defendants Bray and Theye. Although she did not remember the name of the company, the name of the person who interviewed her, or the precise date when she was interviewed, Helmick contends that she sought employment with a publishing company. She admitted, however, that she never was offered a job by the publishing company. She also vaguely recalled that she might have had interviews with, and might have received offers of some nature from, some of four other potential employers, although she did not recall the potential employers' names. She recalled that she might have rejected some of the offers that might have been made by some of these employers whom she might have interviewed with. Finally, she submitted a resume to WTVN, a local television station, approximately a year before accepting her employment at Cincinnati Word Processing, and had a telephone conversation and an interview with a representative of WTVN regarding her availability for employment shortly before she started working at Cincinnati Word Processing. She testified that she was offered a job by WTVN in June or July 1984, which she declined. Significantly, this alleged offer of employment occurred prior to August 16, 1984, and September 1984, the dates apparently specified in Hel-

mick's interrogatory answers as the respective dates when Bray and Theye allegedly made the representations that she could continue her employment as long as she did good work.

This evidence creates no genuine issue of fact regarding detrimental reliance. Helmick had admitted that her declination of WTVN's alleged offer of employment occurred long before Bray and Theye allegedly promised that she could continue her employment as long as she did a good job. A party cannot assert that she relied upon a promise in taking some action if she took the action before the promise was communicated to her.

Based upon all that was before it, the trial court followed the law of Ohio in existence prior to this opinion and, applying such law and standards, properly granted summary judgment to the defendants on plaintiff Helmick's wrongful discharge claims.