## Modarelli
### v.
### First Federal Savings and Loan Assoc. of Wooster
*[Cite as 4 AOA 334]*

*Case No. 2529*
*Wayne County, (9th)*
*Decided June 7, 1990*

*Daniel T. Todt and Rebecca L. Todt, Attorneys at Law, 2000 The Standard Bldg., 1370 Ontario St., Cleveland, OH 44113, for Plaintiff.*

*Lincoln Oviatt, Attorney at Law, 225 N. Market St., Wooster, OH 44691, for Defendants.*

BAIRD, J.

This cause came before the court upon the appeal of Eugene Modarelli from the trial court's grant of summary judgment in favor of First Federal Savings and Loan Association of Wooster and its president, Richard E. Herald.

First Federal fired Modarelli in August of 1988, after nine years of employment. At the time he was fired, Modarelli held the position of vice president, director of data processing and operations, and was earning $40,500 a year. The firing resulted from an apparently volatile relationship Modarelli had with co-workers and employees under his supervision.

Modarelli brought suit against First Federal and its president claiming that an implied contract of employment arose between himself and the savings and loan, such that it could only terminate his employment for cause. Further, he alleged that Herald, as the president of First Federal, tortiously interfered with his employment contract. Soon after the complaint was filed, Modarelli made a request for admissions in which he sought to have the defendants admit to the following:

"Request for Admission No. 5 ---

"Admit that, Plaintiff was promised by Defendants that his job, increases, and promotions were directly related to his job performance and that if he came to work for the Employer these would be the standards under which he would be judged, such that he would not be terminated except for cause."

The defendants admitted that, "...plaintiff was promised by defendants his job, increase, and promotions were directly related to his job performance," but denied the balance of the request. After Herald was deposed, First Federal sought to amend its answer to the request for admissions by deleting the word "job" from its answer so that its answer would read, "...plaintiff was promised by defendants that his increase and promotions were directly related to his job performance...". Modarelli opposed the amendment, arguing that to allow it would be prejudice his case. The trial court permitted the defendants to amend their answer.

First Federal and Herald moved for summary judgment on Modarelli's implied contract claim and on his business interference claim. In deciding the motion, the trial court initially noted that it would accept as true that Modarelli was promised that his job was directly related to his job performance. The court held, however, that such a promise did not necessarily lead to the conclusion that Modarelli could only be fired for cause:

"* * *.

"In the deposition of the plaintiff, we find on page sixty-two that basically this goes back to 1979 when Mr. Herold (sic) offered him the job. It comes down to what was said to him at that time. The plaintiff's testimony is that he can't remember the precise words, but that he implied and he assumed because his job and his increases and his promotions were based on job performance that he could be fired except for just cause.

"It is this Court's opinion, based on a review of the law from this court of appeals district, based on my own experience in these kinds of cases, and based on the law from all over Ohio that this is simply not enough to submit the case to the jury. And I am not even going to get into the possible statute of fraud (sic) problem on the implied contract.

"* * *."

The trial court found that Modarelli inferred that, because his job was directly related to his job performance, he could be fired only for cause. The inference, however, did not support the creation of an implied contract of employment. Further, the trial court concluded that a cause of action for business interference against one's own employer did not lie. The trial court awarded summary judgment to the defendants. Modarelli appeals and sets forth four assignments of error.

### ASSIGNMENT OF ERROR III

"The trial court erred in allowing the defendants to change their answer to plaintiff's request for admission number five where the defendants had sufficient time to formulate their response, specifically broke the question into two parts before answering, and where plaintiff was prejudiced by permitting the change."

Before reaching the substantive issues of this appeal, this court will address the appellant's claim of error as to a Civ. R. 36 admission. Modarelli contends that he was prejudiced by the trial court when it permitted the defendants to amend their answer to a request for admissions. Under Civ. R. 36(B), the trial court may permit a party to amend its answer to a request for admissions when it would aid the presentation of the merits and the party who obtains the admission fails to satisfy the court that he was prejudiced by the amendment. See *Balson* v. *Dodds* (1980), 62 Ohio St. 2d 287, paragraph two of the syllabus.

While it is unclear why the trial court allowed the defendants to amend their answer, we find that Modarelli was not prejudiced. In deciding the summary judgment motion, the trial court disregarded the amended answer:

"* * * I want the record to be clear that in considering this motion for summary judgment, I am willing to accept as true the allegation that the job was directly related to the job performance as that is flushed (sic) out in the depositions.* * *"

Thus, the error, if any, was cured by the trial court prior to its grant of summary judgment. Modarelli's third assignment of error is not well taken.

### ASSIGNMENTS OF ERROR

"I. The trial court erred by granting summary judgment for the defendants where the trial court found that the plaintiff had been promised that his 'job was directly related to his job performance, 'and then held that there did not exist evidence to make this one of the exceptions to an employment-at-will situation.

"II. The trial court erred by not *sua sponte* granting judgment for the plaintiff where the trial court found that the plaintiff had been promised that his 'job was directly related to his job performance' as this is an exception to an employment-at-will situation."

Although, in recent years, courts are more willing to entertain employee suits against former employers, the employment-at-will doctrine still poses a formidable barrier to such causes of action. See generally *Greeley* v. *Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St. 3d 288. The crux of an at-will relationship is that either party to the relationship is free to terminate employment for any reason. *Id* at 234. Three court-created exceptions now exist to the employment at-will doctrine:

"1. The facts and circumstances surrounding an oral employment agreement may give rise to an implied contract of employment that could only be terminated for cause. See *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100;

"2. The employee detrimentally relies on specific promises of job security. *Helmick* v. *Cincinnati Word Processing, Inc.* (1989), 45 Ohio St. 3d 131, paragraph three of the syllabus; and

"3. Where an employer's discharge of an employee violates a statue and therefore contravenes public policy. *Greeley* v. *Miami Valley Maintenance Contrs., Inc., supra,* at paragraph two of the syllabus."

Based upon the allegation in Modarelli's complaint, we will focus our inquiry on whether the trial court properly granted summary judgment on the issue of an implied employment contract.

On appeal, neither party argues whether disputed facts exist, instead each argues as to the proper application of the law. Thus, our scope of review is limited to deciding whether the appellees were entitled to judgment as a matter of law. See *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327. On appeal, Modarelli argues that in granting summary judgment, the trial court ignored the supreme court's decision in *Helmick* v. *Cincinnati Word Processing, Inc., supra*, which, according to Modarelli, recognized that verbal promises as to job security create an implied contractual term of termination only for cause. The *Helmick* case, however, is a further application of principles of promissory estoppel to an employment relationship and not, as Modarelli claims, an application of an implied contract theory.

In the instant case, Modarelli argues that the representation made to him that his employment was directly related to his job performance created an implied contract term that he could only be terminated for cause. If we assume, as did the trial court, that such a representation became a part of the employment agreement, it did not rise to the level of a term in the agreement that prohibited First Federal from firing him except for cause. In the second paragraph of the syllabus in *Mers* v. *Dispatch Printing Co., supra*, the Supreme Court of Ohio held that:

"The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge."

Basing its decision on *Mers*, the Twelfth District Court of Appeals agreed with the trial court that the following remarks made by the employer to its employee did not alter their employment-at-will relationship:

"You get out there and do a good job. We'll take care of you, and we'll do you right. You do us right; we'll do you right * * *.

"You do us a good job, do your work, and we'll see that you're employed by Middletown Hospital as long as you do your work." *Moore* v. *Middletown Regional Hospital* (June 22, 1987), Butler App. No. 86-11-166, unreported.

The court held that the remarks did not constitute a reasonable basis for inferring that the employment was anything more than at will. *Id.*

Like the remarks made in *Moore* v. *Middletown Regional Hospital, supra*, the representation that Modarelli's job was directly related to his job performance does not create an inference that he would only be fired for cause. Generally, an employee's performance will bear upon the duration of his employment even if the employment is characterized as at will. This representation, without more, does not change the nature of an employment-at-will relationship.

Although, after reviewing Modarelli's somewhat convoluted complaint, we are unable to find sufficient allegations to support a promissory estoppel claim, we will address this theory of recovery because it was addressed by the trial court in its grant of summary judgment. Promissory estoppel constitutes an additional limit on an employer's right to discharge his employee:

"* * *.

"The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Mers* v. *Dispatch Printing Co., supra*, at paragraph three of the syllabus.

The supreme court further developed the theory in *Helmick* v. *Cincinnati Word Processing, Inc., supra*. In that case, the court ruled that praise with respect to job performance and discussion of future career development will not modify the employment-at-will relationship. *Id.*, paragraph three of the syllabus. The court went on to hold that to defeat a summary judgment motion there must be at least a facial showing that the employer made specific promises of job security of job security upon which the employee relied to his detriment. *Id.* The court found in *Helmick* that a specific promise was made when, in an attempt to dissuade the employee from leaving, the vice president of the company told her that "the home office thought she was doing a great job, that a raise had been approved, and that a career with the company was in order as long as her job performance was good." *Id.* at 136. Relying upon these statements, the employee stopped looking for other jobs. *Id.*

In the present case, no specific promises were made to Modarelli as they were in *Helmick*. The representation that Modarelli's employment was related to his performance is a far cry from the statements made by the employer in *Helmick*

that not only was the employee doing a good job, but that if she maintained the quality of her work, she would remain with the company. Unlike the situation in *Helmick,* the statements were not made to persuade *Modarelli* to remain with First Federal. The record reveals that, when Modarelli did receive a job offer from another company, the president of First Federal encouraged him, rather an discouraged him to take the offer of employment. As a matter of law, the rather nebulous representations made by First Federal are insufficient to induce any action or forbearance by Modarelli. The trial court correctly granted summary judgment on Modarelli's claims of implied contract and promissory estoppel. Appellant's assignments of error one and two are not well taken.

### ASSIGNMENT OF ERROR IV

"The trial court erred when it held that under Ohio law 'you simply can't sue your boss...for... intentional interference with employment and I'm not going to say anything more about that.'"

Modarelli also contends that the president of First Federal, Richard Herald, intentionally interfered with his employment relationship with the savings and loan by firing him. In his deposition, Modarelli explained how he thought Herald's liability arose:

"* * *.

"Q. In paragraph 19, count 2, you indicates that Defendants intentionally interfered with the relationship, that's the economic relationship, causing it to be terminated. Paragraph 18 and 19.

"A. What is the question?

"Q. How did Defendants interfere with that relationship.

"A. Since Mr. Herald works directly for the board and is the spokesman for the board, anything he does in their name makes them liable.

"Q. How did he intentionally interfere with your relationship?

"A. You mean the contract or economic relationship?

"Q. Yes.

"A. Dismissing me.

"Q. And that's it?

"A. That would be the biggest cause.

"* * *."

Herald stated that he discussed the conflicts that existed between Modarelli and his co-workers with the board of directors. It was the board's feeling that it was doubtful that the conflict could be resolved that prompted him to fire Modarelli. The board subsequently ratified Modarelli's termination.

A cause of action for intentional business interference is based upon the principle that a person who induces or causes a third party to discontinue a business relationship with another is liable for harm caused by the interference. See *Juhasz* v. *Quik Shops, Inc.* (1977), 55 Ohio App. 2d 51, 57. The interference must be caused by one who is not a party to the contract. *Christian* v. *Twinsburg City School Dist.* (Sept. 7, 1988), Summit App. No. 13516, unreported.

Construing the evidence in favor of Modarelli, reasonable minds can come to but one conclusion, *i.e.,* that Herald acted on behalf of the board of directors when he fired Modarelli. Even if Herald's action were initially done without authority, the board adopted them as its own by ratifying his actions in firing Modarelli. Herald, as an officer of First Federal, cannot be said to have interfered with First Federal's relations Modarelli by firing him, for in reality, it was First Federal itself that terminated its business relationship with Modarelli. See *Miller* v. *Hochstetler* (July 26, 1989), Wayne App. No. 2445, unreported. Interference with one's own contract is not actionable. *Id.* Appellant's fourth assignment of error is not well taken.

The trial court properly granted summary judgment to First Federal and Herald on all counts of the complaint.

*Judgment affirmed.*

QUILLIN, P. J., and CIRIGLIANO, J., concur.