[Cite as *Cozzuli v. Sandridge Food Corp.*, 2011-Ohio-4878.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| ANTHONY COZZULI | C.A. No.     10CA0109-M |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SANDRIDGE FOOD CORP. | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellee | CASE No.     10CIV0020 |

DECISION AND JOURNAL ENTRY

Dated: September 26, 2011

WHITMORE, Presiding Judge.

{¶1}   Plaintiff-Appellant, Anthony Cozzuli, appeals from the judgment of the Medina County Court of Common Pleas, granting summary judgment in favor of Defendant-Appellee, Sandridge Food Corp. ("Sandridge").  This Court affirms.

I

{¶2}   Cozzuli began working as a mechanic for Sandridge on January 23, 2005. Cozzuli was fifty-five years old when Sandridge hired him and had previously worked for several other companies, primarily performing electrical maintenance.  Approximately three other individuals worked with Cozzuli on third shift in Sandridge's Maintenance Department at any given time, but Cozzuli earned a higher hourly rate than his fellow mechanics because of his prior experience.  He received a raise after his first ninety days with Sandridge.  Additional raises were contingent upon performance reviews, which Sandridge had its supervisors conduct annually.

**{¶3}** Cozzuli did not receive a raise after his October 2006 performance review. The following summer he applied for a job with another company, partially due to issues he was having with his supervisor and his dissatisfaction with his hourly rate. He received a job offer in August 2007. Cozzuli agreed to forgo the offer, however, after Sandridge offered him the raise he had not received earlier in the year and assured him that there were plans to transfer his supervisor elsewhere. The transfer took place in the spring of 2008.

**{¶4}** From November 2006 until his July 7, 2008 termination date, Cozzuli received negative feedback from his supervisors on multiple occasions. Specifically, both of the individuals who supervised Cozzuli over the course of his employment at Sandridge had concerns that he was not performing at the same level as other mechanics, despite his additional experience. Cozzuli also took unauthorized smoke breaks, arrived late for scheduled meetings, and failed to meet many of the goals he agreed to make an effort to achieve. For instance, although Cozzuli was told on multiple occasions that he needed to learn how to weld certain types of piping and repeatedly promised that he would attend a welding class, he never did so and failed his welding test on more than one occasion. After Cozzuli failed the last welding test, Sandridge decided to terminate his employment. Cozzuli was fifty-seven years old at the time of his termination.

**{¶5}** On January 6, 2010, Cozzuli filed a complaint against Sandridge, seeking relief based on breach of an implied contract, intentional infliction of emotional distress, promissory estoppel, and age discrimination. Sandridge moved for summary judgment on August 2, 2010, and Cozzuli filed a memorandum in opposition on August 25, 2010. Subsequently, the court granted summary judgment in favor of Sandridge on all counts.

**{¶6}** Cozzuli now appeals from the court's judgment and raises one assignment of error for our review.

## II

Assignment of Error

"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEE WHEN GENUINE ISSUE (sic) OF MATERIAL FACT EXISTED REGARDING APPELLANT'S CLAIMS."

**{¶7}** In his sole assignment of error, Cozzuli argues that the trial court erred by entering summary judgment in favor of Sandridge. We disagree.

**{¶8}** This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. Pursuant to Civ.R. 56(C), summary judgment is proper if:

> "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327.

The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735.

{¶9} Cozzuli argues that summary judgment was inappropriate because genuine issues of material fact remain. In his brief, he separately addresses his claims for age discrimination and intentional infliction of emotional distress, but consolidates his argument as to his implied contract and promissory estoppel claims. We tailor our analysis accordingly.

**Age Discrimination**

{¶10} An employer engages in an unlawful discriminatory practice when it terminates an employee, absent just cause, because of the employee's age. R.C. 4112.02(A). A specific statutory cause of action exists for employees who are at least forty years of age and suffer discrimination as a result of an unlawful discriminatory practice. R.C. 4112.14(B). That statute provides that "[n]o employer shall *** discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." R.C. 4112.14(A).

> "In the absence of direct evidence of discrimination, a plaintiff alleging age discrimination must establish a prima facie case using indirect evidence, by demonstrating (1) that he is a member of a protected class; (2) that he was qualified for the position in question; (3) that he suffered an adverse employment action despite his qualifications; and (4) that he was replaced by a person of substantially younger age. If the plaintiff successfully establishes a prima facie case of age discrimination, the employer must articulate a legitimate, nondiscriminatory justification for the employment action. The plaintiff may then prove by a preponderance of the evidence that the justification articulated by the employer is a pretext for discrimination. At all times, however, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with the plaintiff." (Internal quotations, citations, and alterations omitted.) *Welch v. Norton City School Dist. Bd. of Edn.*, 9th Dist. No. 25144, 2010-Ohio-6131, at ¶13.

"The cornerstone of this analysis is whether employment action is the result of discrimination-not merely whether the action is unfair or the justification questionable." *Price v. Matco Tools*, 9th Dist. No. 23583, 2007-Ohio-5116, at ¶31.

{¶11} No one disputes that Cozzuli was more than forty years old at the time of his termination or that his termination constituted an adverse employment action. Thus, only two prongs of Cozzuli's prima facie case were in dispute. See *Welch* at ¶13. As the summary judgment movant, Sandridge bore the burden of showing that no genuine issues existed for trial on those prongs. *Dresher*, 75 Ohio St.3d at 292-93. Sandridge's summary judgment motion, however, only briefly addressed Cozzuli's prima facie case and did not set forth any argument as to the fourth prong. See *Welch* at ¶13 (requiring, as the fourth prong, a showing that the plaintiff was replaced by "a person of substantially younger age"). Sandridge concentrated its efforts on proving that its justification for Cozzuli's termination was not a pretext for discrimination. Consequently, we assume for purposes of our discussion that Cozzuli could satisfy his prima facie burden and limit our analysis to the justification Sandridge offered for his termination.

{¶12} In support of its motion for summary judgment, Sandridge relied upon Cozzuli's deposition testimony and the exhibits introduced during his deposition. Cozzuli admitted in his deposition that he had problems with both of his supervisors at Sandridge and that he received negative feedback several times during the course of his employment. Cozzuli's November 2007 annual performance review listed his job performance as average in most respects, but noted that his "quality [was] a little below the average mechanic." Cozzuli signed his performance review and opted not to write any comments in the "Employee Comments" portion of the paperwork. He also signed a list of goals for the 2007-2008 year. The goals included that Cozzuli generate two cost-saving ideas for the company and that he "attend the next available welding class" and pass a "sanitary pipe weld" test using TIG welding after completing the class. Cozzuli admitted in his deposition that he never submitted any cost-saving ideas, never took a welding class, and never passed the welding tests that Sandridge scheduled for him.

{¶13} With regard to the welding test, Cozzuli's supervisors spoke to him at least once in April 2008, twice in May 2008, and once in June 2008 about the importance of his learning how to weld using TIG welding. Sandridge tested Cozzuli on May 2, 2008 and on June 27, 2008. He indicated to his supervisor before the May 2, 2008 test that he knew how to weld, but failed the test. Further, although he was notified as early as May 9, 2008 that he would be retested by July 1st, he also failed his second welding test. Cozzuli testified in his deposition that he never took a welding class because he tried to learn how to weld on his own time from other Sandridge employees. He admitted that he never contacted any welding schools to determine whether TIG welding classes were available. Cozzuli testified that he did not believe he should have to learn how to perform TIG welding because there were other employees who could not perform the same skill. He admitted, however, that he agreed verbally and in writing that he would take a welding class and learn how to perform TIG welding.

{¶14} Cozzuli also admitted in his deposition that his second manager had several conversations with him regarding topics ranging from his taking unauthorized smoking breaks on company time, arriving late for scheduled meetings, failure to properly communicate with the next shift, and lack of initiative to solve problems on his own before contacting a supervisor. Moreover, Cozzuli signed a document on June 3, 2008 that, not only notified him of his second welding test, but included a warning that "[b]y not completing these tasks ***, you are putting your job in jeopardy." Sandridge relied upon all the foregoing evidence to demonstrate that it had adequate justification for terminating Cozzuli and that its justification was not merely a pretext. Based on all the foregoing evidence, the record supports the conclusion that Sandridge met its initial *Dresher* burden on this issue.

**{¶15}** Cozzuli relied upon his own affidavit to oppose Sandridge's motion for summary judgment. In his affidavit, Cozzuli averred that his performance reviews were "always positive" and that "there was no program in Medina County for instruction on sanitary welding." As set forth above, however, Cozzuli's performance review did contain negative feedback, and Cozzuli admitted in his deposition that he never even contacted any welding schools to obtain information about classes. Neither Cozzuli's memorandum in opposition, nor his affidavit explained the inconsistency that exists between the affidavit and Cozzuli's deposition. As such, the affidavit did not create a genuine issue of material fact. *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, at ¶28. Accord *Stone v. Cazeau*, 9th Dist. No. 07CA009164, 2007-Ohio-6213, at ¶15-16. Both Cozzuli's memorandum in opposition and brief on appeal contain one blanket statement, unsupported by any citation or further argument, that the "alleged reasons proffered by [Sandridge] were not supported by the evidence and are merely a pretext for discrimination[.]" (Emphasis omitted.) Yet, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Bennett v. Roadway Express, Inc.* (Aug. 1, 2001), 9th Dist. No. 20317, at *10, quoting *St. Mary's Honor Center v. Hicks* (1993), 509 U.S. 502, 515. Cozzuli's unsupported averment that Sandridge's reasons for his termination were pretextual does not amount to proof that Sandridge's justification was a pretext.

**{¶16}** Upon our review of the record, we cannot conclude that the trial court erred by awarding summary judgment in Sandridge's favor on Cozzuli's claim of age discrimination. Cozzuli's argument to the contrary lacks merit.

**Intentional Infliction of Emotional Distress**

{¶17} "In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgt., Inc.* (1994), 71 Ohio St.3d 408, 410. This Court has recognized that "[t]ermination of employment, without more, does not constitute the outrageous conduct required to establish a claim of intentional infliction of emotional distress, even when the employer knew that the decision was likely to upset the employee." *Craddock v. Flood Co.*, 9th Dist. No. 23882, 2008-Ohio-112, at ¶20.

{¶18} Cozzuli's termination is the sole evidence upon which he relies in arguing that the trial court erred by entering summary judgment against him on this claim. As noted supra, however, termination alone does not establish intentional infliction of emotional distress. Id. Without any further argument from Cozzuli, this Court will not engage in any additional analysis with regard to this claim. *Cardone v. Cardone* (May 6, 1998), 9th Dist. No. 18349, at *8 ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out."). We conclude that the trial court did not err by entering summary judgment against Cozzuli on his intentional infliction of emotional distress claim.

**Implied Contract and Promissory Estoppel**

{¶19} The doctrines of implied contract and promissory estoppel are two exceptions to the general rule that "employment situations of no fixed duration are presumed to be at-will" and terminable at any time for any lawful reason. *Shetterly v. WHR Health Sys.*, 9th Dist. No. 08CA0026-M, 2009-Ohio-673, at ¶6-12. A plaintiff seeking to prove the existence of an implied contract "bears the heavy burden of demonstrating (1) assurances on the part of the employer

that satisfactory work performance was connected to job security; (2) a subjective belief on the part of the employee that he could expect continued employment; and (3) indications that the employer shared the expectation of continued employment." *Craddock* at ¶7. As to promissory estoppel, this Court has held that:

> "The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee. This exception requires 'specific representations' rather than general expressions of optimism or good will. Standing alone, praise with respect to job performance and discussion of future career development will not modify the employment-at-will relationship." (Internal quotations, citations, and alterations omitted.) *Shetterly* at ¶6.

"Whether a plaintiff proceeds under a theory of implied contract or promissory estoppel, *** specific representations leading to an expectation of continued employment are essential." *Craddock* at ¶8.

{¶20} In his deposition, Cozzuli admitted that he received a copy of Sandridge's employee handbook when he began working there and signed an "Employee Acknowledgment and Receipt" that contained the following language: "I understand and agree that *** [n]othing contained in the Employee Handbook is intended to create, nor shall be construed as creating, an express or implied contract or guarantee of employment for a definite or indefinite term." Cozzuli did not have a written employment contract with Sandridge, but testified that he was led to believe that he would have long-term employment with the company. He admitted that he was never told he would only be discharged for just cause. Rather, he based his implied contract/promissory estoppel theory on the following items: his receipt of a pay raise in exchange for staying with the company in August 2007; the positive performance reviews he received; feedback from other Sandridge employees who "seemed satisfied with [his] work"; and a

statement made when he was hired that "[t]here shouldn't be any problem" if he wanted to stay at Sandridge for the duration of his remaining time in the workforce.

{¶21} Cozzuli admitted in his deposition that his November 2007 performance review actually did contain negative feedback and that his direct supervisors repeatedly gave him negative feedback in person. The only actual statement he alleged to be a promise that his employment would be long-term was the statement that there "shouldn't be any problem" with him spending his remaining time in the workforce there. Yet, Cozzuli could not remember who made that statement. More importantly, he did not explain why an assertion that something "shouldn't" be a problem amounted to an actionable one for purposes of either implied contract or promissory estoppel. See App.R. 16(A)(7). See, also, *Shetterly* at ¶11. "Standing alone, *** discussion of future career development will not modify the employment-at-will relationship." *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, paragraph three of the syllabus. Cozzuli could not point to any specific representation he received that his employment would be long-term or that he could only be terminated for just cause. See *Craddock* at ¶8. To the extent that Cozzuli did receive positive feedback in the course of his employment, the record does not support the conclusion that it amounted to anything more than an "expression[] of optimism or good will." *Shetterly* at ¶6. Accordingly, we conclude that the trial court did not err by entering judgment in Sandridge's favor on Cozzuli's claims for implied contract and promissory estoppel. Cozzuli's sole assignment of error is overruled.

III

{¶22} Cozzuli's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

ERIC D. HALL, Attorney at Law, for Appellant.

JAMES D. KUREK, Attorney at Law, for Appellee.