TRADER, Appellant,

v.

PEOPLE WORKING COOPERATIVELY, INC., Appellee.

[Cite as *Trader v. People Working Cooperatively, Inc.* (1994), 104 Ohio App.3d 690.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–930716.

Decided Nov. 30, 1994.

692

Lindhorst & Dreidame Co., L.P.A., and *James M. Moore,* for appellant.

*Arter & Hadden* and *Gary S. Batke,* for appellee.

_____

*Per Curiam.*

Thomas S. Trader, plaintiff-appellant, was terminated from his employment at People Working Cooperatively, Inc. ("PWC"), defendant-appellee. Trader subsequently sued PWC, seeking recovery under the principles of contract, promissory estoppel, public policy, defamation, and intentional infliction of emotional distress. In response to PWC's motion, the trial court entered summary judgment against Trader. From that order he brings this appeal.

## ASSIGNMENT OF ERROR: SUMMARY JUDGMENT

In his single assignment of error, Trader contends that the trial court erred when it granted summary judgment for PWC. When a party seeks to avoid summary judgment, it must produce some evidence on each issue for which it bears the burden of production at trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 324, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 274–275, as adopted by the Ohio Supreme Court in *Wing v. Anchor Media, Ltd.* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. If the nonmoving party has presented evidence on each element of the claim, the court may not grant summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 116, 526 N.E.2d 798, 802.

### A. *Breach of Contract*

First, Trader maintains that summary judgment was improper because he presented evidence that PWC breached its employment contract. In Ohio, except for a few narrow exceptions, an employee may be discharged for any reason. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, paragraph one of the syllabus. In this case, the parties signed a contract stating that Trader could "be terminated with or without cause, and with or without notice, at any time, at the option of PWC or yourself." This contract, then, preserves in written form Trader's common-law, at-will status of employ-

ment. Trader argues, nonetheless, that persons at PWC made representations to him that had the effect of modifying the terms of this written contract.

When a court construes a contract, its overriding goal is to give effect to the intent of the parties. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 132, 31 OBR 289, 290–291, 509 N.E.2d 411, 413. When the terms of a written contract are clear, the court presumes that the parties' intent resides in the words of the agreement. *Id.; Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150; *Inland Refuse Transfer Co. v. Browning–Ferris Industries* (1984), 15 Ohio St.3d 321, 323, 15 OBR 448, 449–450, 474 N.E.2d 271, 273; *Stony's Trucking Co. v. Pub. Util. Comm.* (1972), 32 Ohio St.2d 139, 142, 61 O.O.2d 388, 389–390, 290 N.E.2d 565, 568. In such a case, the parol evidence rule prevents parties from introducing evidence of prior or contemporaneous negotiations that would alter the terms of the written document. *Uebelacker v. Cincom Systems, Inc.* (1988), 48 Ohio App.3d 268, 273, 549 N.E.2d 1210, 1217.

A contract may be altered, however, by subsequent modifications to its terms. *Richland Builders, Inc. v. Thome* (1950), 88 Ohio App. 520, 527, 45 O.O. 264, 267–268, 100 N.E.2d 433, 437; *Koukios v. Marketing Dynamics, Inc.* (Sept. 7, 1994), Hamilton App. Nos. C–920913, C–920918, C–930289 and C–930555, unreported, 1994 WL 481769. In this case, because the contract is clear, to avoid summary judgment, Trader must present evidence of subsequent, not prior or contemporaneous, negotiations.

Trader identifies two general representations made to him that he claims altered the terms of the agreement: (1) PWC might terminate employees if it lost its government funding; (2) employees had to "work real hard to get fired from PWC." In his deposition, Trader engaged in the following colloquy:

"Q: So you don't know whether those comments were made before or after you signed Defendant's Exhibit No. 1 [the written contract].

"A: I don't know."

According to this testimony, Trader has not introduced evidence that PWC made these representations subsequent to the signing of the employment contract. They are, therefore, barred by the parol evidence rule.

Trader next argues that PWC could not terminate employees unless they accumulated excessive "points" under the policy handbook. A policy handbook may give grounds to modify the terms of a contract. *Mers,* 19 Ohio St.3d at 104, 19 OBR at 264–265, 483 N.E.2d at 154–155. As a general matter, for a modification to a contract to be binding, it must be supported by consideration.

*Richland Builders,* 88 Ohio App. at 527, 45 O.O. at 267–268, 100 N.E.2d at 437.[1] Regarding handbooks specifically, if there is no mutual assent between the parties, a handbook is merely a unilateral statement of rules and policies that does not create obligations or rights. *Tohline v. Cent. Trust Co., N.A.* (1988), 48 Ohio App.3d 280, 282, 549 N.E.2d 1223, 1227, cited with approval in *Wing,* 59 Ohio St.3d at 110, 570 N.E.2d at 1098; *Bartlett v. Daniel Drake Mem. Hosp.* (1991), 75 Ohio App.3d 334, 338, 599 N.E.2d 403, 406.

In this case, Trader testified that "I was handed the personnel policy book, along with my helmet and goggles and air respirator and t-shirts." This, therefore, is a unilateral exchange, not a modification of a contract based on consideration and mutual assent. Consequently, the handbook also did not modify the terms of the contract.

Trader's argument regarding modification of the contract fails.

### B. *Promissory Estoppel*

 Trader next argues that his dismissal was wrongful because the doctrine of promissory estoppel precluded PWC from terminating him without just cause. In a promissory-estoppel, employment-at-will case, an employer may be prevented from dismissing an employee if it has made promises on which an employee reasonably has relied. *Mers,* 19 Ohio St.3d at 103–104, 19 OBR at 263–265, 483 N.E.2d at 154–155. The test is "whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Id.* at paragraph three of the syllabus. For a representation to support a promissory-estoppel exception to employment at will, the statement must be a "specific promise of continued employment." *Wing,* 59 Ohio St.3d at 110–111, 570 N.E.2d at 1098–1099; *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 136, 543 N.E.2d 1212, 1217; *Mers,* 19 Ohio St.3d at 104, 19 OBR at 264–265, 483 N.E.2d at 154 (specific promise of reinstatement). For example, in *Helmick, supra,* at 136, 543 N.E.2d at 1217, an employer "reassured [the employee] that she would have a job if her performance was satisfactory." The court found this statement to be a specific promise of job security.

Trader claims that PWC's representations support his promissory-estoppel claim. Regarding government funding, that statement was not a promise of continued employment, but an admonishment that employees may be dismissed for reasons unrelated to job performance. The statement that one had to "work

---

1. Reliance to support modifications is discussed in the section "Promissory Estoppel."

real hard to get fired from PWC" also is not a specific promise of continued employment.

■■■■ Trader further identifies his favorable job evaluations as promises that precluded his dismissal. He has presented evidence that PWC rated his work from above average to exceptional. These evaluations fail, however, because "praise with respect to job performance" will not modify an employment at-will status. *Helmick,* paragraph three of the syllabus.

Finally, Trader states that he relied to his detriment on promises in the handbook. He admits that the handbook did not state that he could only be dismissed for just cause. He identifies nothing more in the handbook than a point system for dismissal. Thus, the handbook relates to general employment procedures and is not a specific promise of job security.

Therefore, neither the comments nor the handbook is sufficient to satisfy the elements of promissory estoppel.

## C. *Greeley: Public Policy*

■■■■ Next, Trader claims that the trial court erred in granting summary judgment on his claim under *Greeley v. Miami Valley Maintenance Contractors, Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981. *Greeley* states that an employer may not discharge an employee "for a reason which is prohibited by statute." *Id.* at paragraph one of the syllabus. Since *Greeley,* the court has expanded the scope of the law by stating that an employee may bring a *Greeley* claim for violations of policy as expressed in the Ohio and United States Constitutions, administrative rules, and the common law. *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus. The court has suggested that to state a *Greeley* claim, the plaintiff must present evidence to show that (1) a clear public policy existed; (2) the dismissal would jeopardize public policy; (3) the dismissal was motivated by conduct related to the public policy; and (4) the employer lacked overriding legitimate business justification for the dismissal. *Painter,* 70 Ohio St.3d at 384, 639 N.E.2d at 57, fn. 8.

Trader presents facts to show that in January 1991, his supervisor, Okey Spaulding, asked Trader to inform PWC officials about incidents of alleged marijuana abuse by employees. Trader also testified that after he reported the incidents, he was harassed by his fellow employees. On September 19, 1991, as the stress of the alleged harassment increased, Trader states that he had another meeting with PWC officials in which he reiterated his claims of abuse and explained the subsequent harassment. After that meeting, Trader claimed that a fellow employee falsely informed the officials that Trader had threatened to shoot a person at PWC. After the shooting accusation, PWC dismissed Trader. One

official said: "[W]e were going to devise a plan to solve this until the gun issue came up. Since then, we have decided to terminate you."

Regarding the first element set forth in *Painter, supra,* we find the existence of a clear public policy in this case. The legislature has prohibited the abuse of marijuana, and this court has held that the whistleblower statute will support a *Greeley* claim. *Haynes v. Zoological Soc. of Cincinnati* (Dec. 22, 1993), Hamilton App. Nos. C–910598 and C–910635, unreported, 1993 WL 538977, reversed on other grounds (1995), 73 Ohio St.3d 254, 652 N.E.2d 948; R.C. 2925.11.

Regarding the second element, jeopardy to the public policy, the legislature has recognized that it is important for employees to inform employers of illegal, hazardous situations in the workplace. R.C. 4113.52(A)(1)(a). If PWC were able to dismiss Trader for conduct related to drug-abuse information provided by him, it is likely that employees in similar circumstances would be dissuaded from following his example.

We next consider whether Trader's termination was motivated by the information he gave, which is conduct related to the public policy against drug abuse. First, we note that issues of proximate cause generally are questions to be decided by the trier of fact. *Cascone v. Herb Kay Co.* (1983), 6 Ohio St.3d 155, 6 OBR 209, 451 N.E.2d 815, paragraph two of the syllabus. We determine that the allegations made by Trader set forth in the record are sufficient to raise a question of fact as to whether his dismissal was caused by the information he gave to PWC about alleged marijuana abuse.

Regarding the employer's lack of overriding business justification for the dismissal, Trader has presented evidence that he did not make the shooting threat. In addition, he has shown that his job performance was above average to exceptional. Therefore, there also is evidence in the record on the lack of overriding justification for the dismissal, sufficient to prevent summary judgment for PWC.

PWC makes two arguments to the contrary. First, it asserts that Trader's *Greeley* claim should be disallowed because it was not pleaded in the complaint with sufficient particularity. This argument must be taken in light of *Sabo v. Schott* (1994), 70 Ohio St.3d 527, 639 N.E.2d 783. We held in *Sabo v. Schott* (Mar. 2, 1994), Hamilton App. No. C–920941, unreported, 1994 WL 59464, that a *Greeley* complaint must specify the statute that is the basis for the public-policy claim. The Ohio Supreme Court reversed, stating that Sabo's complaint alleged an act which, "if proven to be true, would constitute conduct on the part of the defendants, which violates the public policy of this state." *Sabo,* 70 Ohio St.3d at 527, 639 N.E.2d at 783. Here, the complaint alleged that Trader notified PWC "that violations of law and company policy were occurring on a regular basis." Those violations were specifically identified in the complaint as employee drug

abuse during the course of employment. Furthermore, in Trader's response to PWC's motion for summary judgment, Trader detailed the elements of his *Greeley* claim. Therefore, under the Ohio Supreme Court's holding in *Sabo, supra,* Trader has alleged conduct which, if proved, would be a violation of public policy, and this argument fails.

Next, PWC argues that the whistleblower statute is the exclusive remedy for Trader's claim. Trader's claim, however, included damages for injuries such as emotional distress and humiliation, as well as economic damages pursuant to R.C. 4113.52. Under our holding in *Haynes v. Zoological Soc. of Cincinnati, supra,* R.C. 4113.52 does not exclude the *Greeley* claim.

Trader's argument in support of his *Greeley* claim is well made.

### D. *Defamation*

Trader next contends that his fellow employees committed defamation against him with comments such as the allegation that he threatened to shoot someone. Trader has not presented any facts to show that these comments were made within the scope of employment. Therefore, PWC is not liable under the doctrine of *respondeat superior* for allegedly defamatory comments made by its employees. *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449, 455; *Gelbman v. Second Natl. Bank* (1984), 9 Ohio St.3d 77, 78, 9 OBR 280, 280–281, 458 N.E.2d 1262, 1263; Restatement of the Law 2d, Torts (1965) 122, Section 315 (persons not liable for wrongful acts of third parties); see, also, *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 329, 587 N.E.2d 825, 828–829; Restatement of the Law 2d, Agency (1958) 481, Section 219 (*respondeat superior;* scope of employment).[2]

Trader also alleges that PWC itself defamed him. Trader contends that PWC told a potential future employer that Trader was a "good worker," but it was "questionable" if PWC would rehire him. One requirement for a defamation claim is that the statement must be "false and defamatory." *Tohline,* 48 Ohio App.3d at 284, 549 N.E.2d at 1228. Trader does not allege that either the "good worker" or the "questionable" statements were false. Therefore, the statements do not satisfy the elements of a defamation claim, and this argument fails.

### E. *Intentional Infliction of Emotional Distress*

Trader's final claim is that PWC is liable for intentional infliction of emotional distress. Trader states that he has suffered anxiety, sleeplessness, and "a lot of strain, mental strain." This is not evidence of a "severe and debilitating"

---

**2.** Trader did not bring this cause as a failure to supervise under Restatement of the Law 2d, Torts (1965) 125, Section 317(b)(ii).

injury as required by *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, syllabus (serious emotional distress), and *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759 (defining serious emotional distress). This argument, therefore, fails.

## CONCLUSION

The court correctly granted summary judgment on the contract, promissory-estoppel, defamation, and intentional-infliction-of-emotional-distress claims. Those portions of the assignment of error are overruled. The court erred in granting summary judgment on the *Greeley* claim. That portion of the assignment of error is sustained. The judgment of the trial court, therefore, is affirmed in part and reversed in part. This cause is remanded for further proceedings on the *Greeley* claim only, consistent with law and the reasoning of this decision.

*Judgment accordingly.*

HILDEBRANDT, P.J., SHANNON and KLUSMEIER, JJ., concur.