DECISION.
Plaintiff-appellant Jack Turner began working for Pizza Hut of Cincinnati, Inc., an independent franchise. Turner successfully managed various Pizza Hut locations throughout southwestern Ohio and northern Kentucky. He was honored as a "Million Dollar Manager" for two consecutive years.
In 1990, Turner's employer sold the franchise to Pepsico and Pizza Hut, Inc. At that time, Turner was managing the Beechmont Pizza Hut. Turner was transferred to the manager's position at the Eastgate Pizza Hut. Turner testified that when he arrived at Eastgate, he found the restaurant in disarray. Turner stated that he warned two Eastgate employees about giving food to customers without charging them. He also disciplined two employees for fashioning pizza dough into penises and leaving them in the walk-in refrigerator. Subsequently, Turner brought some of the employees who had worked for him at Beechmont to the Eastgate Pizza Hut. There was some conflict between the long-time Eastgate employees and those Turner brought from Beechmont. Apparently, there was some resentment because the Beechmont employees took over the hours of some existing Eastgate employees.
In May of 1992, an anonymous letter was sent to the Pizza Hut corporate offices complaining about Turner. The letter, which purported to be from a long-time Eastgate employee, raised allegations of management problems at Eastgate. In addition, the letter accused Turner of sexual harassment. The letter stated that Turner was (1) "[a] ladies' man and flaunts it"; (2) "[c]onstantly making cruel remarks, sexual" in nature; (3) "dating" his employees; and (4) showing favoritism to an employee he was "dating." It was a violation of Pizza Hut company policy for any supervisor to date a subordinate.
Keith Oreson, Pizza Hut's regional human-resources manager, came to Eastgate to investigate the allegations raised in the May 1992 letter. Turner admitted to telling "off-color" jokes. Oreson also discovered that Turner had made comments with sexual overtones to other employees. In addition, Turner was dating a woman who had been his subordinate. Turner stated that when he decided to pursue a personal relationship with the subordinate, he transferred her out of the Eastgate restaurant within a week; however, there was some dispute about when the employee was actually transferred.
As a result of his investigation, Oreson directed Eric Wolf, Turner's immediate supervisor, to counsel Turner about his managerial style and to review Pizza Hut's sexual-harassment policy with him. Pizza Hut's sexual-harassment policy stated that employees violating the policy would be subject to disciplinary measures "which may include termination." The policy defined harassment as "[a]ny form of verbal or physical behavior which is unsolicited, unwelcome, and interferes with an individual's work performance or creates a threatening work environment." At trial, Turner testified that he was familiar with the policy and that he was aware that a violation of the policy could lead to termination.
The tension continued at the Eastgate Pizza Hut. One employee had a dispute with Turner about her vacation. The employee went to Eric Wolf, who sided with the employee. That same employee was later terminated by Turner for directing profanity at him in front of customers. Wolf rehired the employee without going through the Pizza Hut procedure for rehiring terminated employees.
In late summer or early fall of 1992, a second anonymous letter complaining about Turner's conduct was received at Pizza Hut corporate offices. The letter appeared to have been written by the same person who wrote the first anonymous letter. An investigation was conducted by Eric Wolf and Deb Ternove, Pizza Hut's regional human-resources manager. Wolf posted a memorandum at the Eastgate Pizza Hut, which stated that anonymous complaints were not easy to investigate and that any employee who had a complaint should come forward.
A female employee came forward with a complaint. Wolf reported the complaint to Ternove, who interviewed the employee. The employee told Ternove that Turner had engaged in sexually suggestive behavior and had made lewd comments to her. Ternove was referred to two other female employees who stated that "dirty" jokes were still being told in the Eastgate restaurant, and that Turner often flirted with the employees. Based upon her conversations with the employees and the anonymous letters, Ternove determined that there was sufficient cause to investigate the environment at the Eastgate Pizza Hut without Turner being present. Ternove stated that she did not want Turner present for the investigation "[b]ecause of the nature of the violation which was harassing and intimidating behavior."
On December 9, 1992, Wolf notified Turner that he was being suspended pending an investigation of the matter. Ternove developed questionnaires to be completed by the Eastgate employees. Wolf had the employees anonymously complete the questionnaires. The results of the questionnaires showed that while there was a great deal of support for Turner as a manager, there were still a lot of "dirty" jokes being told at Eastgate. A "handful" of employees stated that they were bothered by the "offensive" jokes. Ternove decided to recommend that Turner be terminated because (1) there had been two complaints against Turner; (2) Turner had been warned about the joking and harassing behavior; and (3) there was sufficient corroboration of the frequency and duration of the harassing conduct. Wolf subsequently terminated Turner.
Turner filed a complaint against Eric Wolf and Pizza Hut on December 16, 1993, alleging claims for wrongful termination based upon breach of an implied contract and promissory estoppel, defamation, negligent supervision, and intentional infliction of emotional distress. A trial was held on July 6, 1998. At the close of all the evidence, the trial court directed a verdict in favor of the defendants on Turner's claims for defamation, promissory estoppel, negligent supervision, and intentional infliction of emotional distress. Turner's claim against Pizza Hut for breach of an implied contract of employment was submitted to the jury. Certain interrogatories were also submitted to the jury over Turner's objection. The jury returned a verdict in favor of Pizza Hut. Turner has appealed.
Turner's first assignment of error alleges that the trial court erred in granting directed verdicts in favor of the defendants on Turner's claims for defamation, promissory estoppel and negligent supervision.
Turner argues that reasonable minds could have reached different conclusions as to whether Eric Wolf and Pizza Hut defamed him by publishing false allegations of sexual harassment about him. Further, Turner argues that he presented sufficient evidence of actual malice on the part of Wolf.
"Defamation is the unprivileged publication of false and defamatory matter about another." McCartney v. Oblates of St.Francis de Sales (1992), 80 Ohio App.3d 345, 609 N.E.2d 216; seeMcCarthy v. Cincinnati Enquirer, Inc. (1956), 101 Ohio App. 297,136 N.E.2d 393. A statement is defamatory if it tends to injure a person's reputation or to expose him to public hatred, contempt, ridicule, shame or disgrace, or to affect him adversely in his trade, profession or business. See Katz v. Enzer (1985), 29 Ohio App.3d 118,504 N.E.2d 427.
A qualified privilege attaches to a publication where it is made in a reasonable manner and for a proper purpose, seeConese v. Nichols (Mar. 13, 1998), Hamilton App. Nos. C-970208 and C-970446, unreported, concerning a matter in which individuals share a common interest or duty. See Evely v. Carlon Co., Div. ofIndian Head, Inc. (1983), 4 Ohio St.3d 163, 447 N.E.2d 1290; Hahnv. Kotten (1975), 43 Ohio St.2d 237, 331 N.E.2d 713; Lail v.Madisonville Child Care Project, Inc. (1989), 55 Ohio App.3d 37,561 N.E.2d 1063. Where statements are made concerning the activities of employees arising out of their employment, a qualified privilege is afforded statements concerning matters of common business interest. See Evely v. Carlon Co., supra; Masonv. The Wackenhut Corp. (Sept. 30, 1987), Hamilton App. No. C-860544, unreported.
Proof of actual malice is essential to defeat a qualified privilege. See A B-Abell Elevator Co., Inc. v.Columbus/Central Ohio Building Construction Trades Council
(1995), 73 Ohio St.3d 1, 651 N.E.2d 1283. In a qualified-privilege case, "actual malice" is defined as acting with knowledge that the statement is false or acting with reckless disregard of its truth or falsity. See Jacobs v. Frank (1991),60 Ohio St.3d 111, 573 N.E.2d 609; Simpson v. Bakers/Local No. 57,Bakery, Confectionery Tobacco Workers International Union,AFL-CIO CLC (May 1, 1998), Hamilton App. No. C-960517, unreported.
The statements about sexual harassment were made by employees of Pizza Hut to other employees of Pizza Hut, and concerned Turner's activities arising out of his employment with the company. They were afforded a qualified privilege because they concerned matters of common business interest. Therefore, Turner had to show that the statements were made with actual malice.
Turner failed to raise a factual question as to the issue of actual malice. Pizza Hut had a legitimate interest in investigating the complaints of sexual harassment lodged against Turner. Wolf, as Turner's supervisor, was instructed to conduct the investigation. Wolf used the questionnaires developed by Ternove. The questionnaires were distributed to Pizza Hut employees at their place of employment. There was no evidence that Wolf or any of Turner's other supervisors knowingly transmitted false statements or acted with reckless disregard of the truth or falsity of the sexual-harassment charges. On the contrary, the charges were investigated to determine their accuracy.
Turner argues that he presented evidence that Wolf held a grudge against him and was "out to get" him, and that, therefore, he raised an issue of fact as to Wolf's actual malice. We disagree. There is no evidence that Wolf published any statements about sexual harassment with the knowledge that the statements were false or with reckless disregard of their truth or falsity. The trial court did not err in granting the defendants' motions for directed verdicts on Turner's defamation claims.
Turner next argues under his first assignment of error that the trial court erred in granting a directed verdict on his claim for wrongful termination based on promissory estoppel. Turner claims that he relied on Pizza Hut's policies and past practices for the investigation of, and the imposition of discipline for, complaints of sexual harassment. Turner further claims that he relied on Wolf's promise that a "formal investigation" would be conducted. Turner alleges that the investigation by Wolf was incomplete and that Turner was not given a chance to defend himself against the charges, in violation of Wolf's promise and Pizza Hut's policies.
Under the theory of promissory estoppel, an employer may be prevented from terminating an employee if the employer has made promises upon which the employee has reasonably relied. SeeLehmann v. AAA Cincinnati (Mar. 26, 1999), Hamilton App. No. C-980163, unreported; Walker v. The Procter Gamble Co. (Oct. 2, 1996), Hamilton App. No. C-950188, unreported. The test is "whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." See Mers v. Dispatch PrintingCo. (1985), 19 Ohio St.3d 100, 483 N.E.2d 150. For a representation to support a promissory-estoppel exception to employment at will, the statement must be a "specific promise of continued employment." See Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, 570 N.E.2d 1095; Helmick v. CincinnatiWord Processing, Inc. (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212;Trader v. People Working Cooperatively, Inc. (1994), 104 Ohio App.3d 690,663 N.E.2d 335; Hill v. The Christ Hospital (Nov. 20, 1998), Hamilton App. No. C-970560, unreported; Walker v. TheProcter Gamble Co., supra. In order to apply the doctrine of promissory estoppel, it is also essential that the employee show some harm in relying on the employer's representations. SeeLehmann v. AAA Cincinnati, supra; Pulver v. Rookwood HighlandTower Investments (Mar. 26, 1997), Hamilton App. Nos. C-950361 and C-950429, unreported.
Turner did not submit evidence of any specific promise of continued employment or of any detrimental reliance on his part. There is no evidence that Turner refrained from seeking other employment or refused any offers of employment due to any promise made by the defendants. Even if it is assumed, arguendo, that Wolf promised to conduct a "formal investigation," the fact that the investigation of the complaints of sexual harassment resulted in a determination adverse to Turner is not the detrimental reliance that promissory estoppel requires. SeeTohline v. Central Trust Company, N.A. (1988), 48 Ohio App.3d 280,549 N.E.2d 1223. The trial court did not err in granting the defendants' motions for directed verdicts on Turner's promissory-estoppel claims.
Turner also argues under his first assignment of error that the trial court erred in granting the motion for directed verdict on his claim for negligent supervision, because Pizza Hut failed to properly supervise Wolf's investigation of the complaints of sexual harassment.
In Strock v. Pressnell (1988), 38 Ohio St.3d 207,527 N.E.2d 1235, the Ohio Supreme Court stated that "an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer." "There must first be liability on the part of the employee before the employer may be liable for the employee's acts." Campbell v. Colley (1996), 113 Ohio App.3d 14,680 N.E.2d 201. Because Turner did not submit sufficient evidence to maintain his cause of action against Wolf, he could not maintain an action against Pizza Hut for negligent supervision. The trial court did not err in granting Pizza Hut's motion for directed verdict on Turner's claim for negligent supervision.
The first assignment of error is overruled.
Turner's second assignment of error alleges that the trial court erred in submitting an interrogatory to the jury, when that interrogatory misstated the law of wrongful termination based upon an implied contract of employment.
The sole cause of action submitted to the jury was Turner's claim for wrongful termination based upon the breach of an implied contract of employment. Along with the verdict forms, the trial court submitted interrogatories over Turner's objection. Turner argues that the first interrogatory was a misstatement of the law of implied contract in employment.
The interrogatory stated:
 Do you find by a greater weight of the evidence that Jack Turner was an employee at will with Pizza Hut, Inc.?
The jury was instructed to circle "yes" or "no" in response to the interrogatory. The jury circled "yes" and returned a verdict in favor of Pizza Hut.
We hold that the interrogatory was a correct statement of the law. The jury had to determine whether Turner was an employee at will or whether he had an implied contract with Pizza Hut such that he could be discharged only for just cause, and in accordance with Pizza Hut's progressive-discipline policy. The jury determined that Turner was an employee at will, thereby precluding a finding of an implied contract of employment. The jury's answer to the interrogatory was consistent with the jury's general verdict in favor of Pizza Hut. We find no error in the submission of the interrogatory to the jury. The second assignment of error is overruled.
Turner's third assignment of error, which alleges that the trial court erred in admitting certain of the defendants' exhibits into evidence, is overruled because Turner has not demonstrated that he was prejudiced by the admission of the exhibits. We have reviewed the exhibits, and we fail to see how Turner was prejudiced by their admission.
The judgment of the trial court is affirmed.
Judgment affirmed.
 Hildebrandt and Gorman, JJ., concur.