**Rosa B. BROWN, Plaintiff,**

v.

**EG & G MOUND APPLIED TECHNOLOGIES, INC., Defendant.**

No. C–1–99–082.

United States District Court, S.D. Ohio, Western Division.

Oct. 24, 2000.

---

Kelly Mulloy Myers, Freking & Betz, Cincinnati, OH, for Rosa B. Brown, plaintiffs.

Michael Wesley Hawkins, Dinsmore & Shohl, Cincinnati, OH, for EG & G Mound Applied Technologies, Inc., defendants.

### ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 11); Plaintiff's Response (doc. 14); and Defendant's Reply (doc. 18). In addition, the Court held a hearing in this case on August 22, 2000 (doc. 19).

### BACKGROUND

Plaintiff Rosa B. Brown brings this action against Defendant EG & G Mound Applied Technologies alleging that she was terminated from her employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* (hereafter "ADEA") and Ohio's state law counterpart, Ohio Rev.Code Ann. § 4112.02(N) (Anderson 2000) (doc. 1). Plaintiff's Complaint also alleges that Defendant's actions constitute gender and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* (2000) and Ohio Rev.Code Ann. § 4112.02(A) (Anderson 2000) (*Id.*). Finally, the Complaint pleads claims for a breach of express or implied contract, promissory estoppel, and breach of public policy under Ohio law (*Id.*). In its Answer, Defendant denies Plaintiff's claims of discrimination, breach of contract, promissory estoppel, and wrongful discharge claims, asserting that the company rightfully terminated Plaintiff's employment for nondiscriminatory reasons and did not violate any express or implied contract claims (doc. 2).

Defendant is a corporation doing business in the State of Ohio (doc. 1). Plaintiff is a citizen of the State of Ohio (*Id.*). Jurisdiction of this case is proper pursuant to Title 28 U.S.C. § 1331 as this action arises under the laws of the United States. Jurisdiction of Plaintiff's state claims is proper pursuant to Title 28 U.S.C. § 1367(a) as the state claims are so related to the federal claims that they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a) (2000). The following facts are drawn from the pleadings and documentary evidence in this case.

Plaintiff is an African–American female who was born August 20, 1943 (doc. 1). Plaintiff has been employed as a technician at the Mound Nuclear Energy Department (hereinafter "Mound facility") for Defen-

dant EG & G since 1977 (*Id.*). Plaintiff's primary responsibility was cleaning tooling for the Cassini Mission, a federally funded program (doc. 14). Plaintiff had been at her position for a total of 18 years (doc. 1). Plaintiff asserts that male employees had historically performed Plaintiff's job at the Mound facility (doc. 14).

The Mound facility is a Department of Energy ("DOE") site in Miamisburg, Ohio (doc. 14). Historically, the site was used for the production of nuclear weapons (doc. 11). In the late 1970s the Mound facility assumed responsibility for production of radioisotope thermoelectric generators (hereinafter "RTGs") (*Id.*). In October 1988, Defendant began its contract with the Department of Energy at the Mound facility in order to produce RTGs for the Cassini Mission, a project to send an unmanned space probe to the planet Saturn (doc. 14). In December 1994, when the weapons production budget was terminated at the site, the Mound facility converted to a safe shut-down mode to shift from weapons production to industrial production (*Id.*, Morris Dep. at 9, Howell Dep. at 11). The site was to remain open, however, to continue on the Cassini Mission (*Id.*). Defendant contends that at this point DOE specifically instructed Defendant to begin closing the site (*Id.*, Williams Dep. at 14).

According to Defendant, it began to anticipate layoffs and began evaluating which employees would have to be placed in an "unfunded" group (*Id.*). Employees were evaluated and ranked according to a performance matrix (*Id.*). Each employee was given points in a number of categories including productivity, ability to perform multiple jobs, and seniority (docs. 11 & 14).

In September 1996, Defendant offered a Voluntary Separation Payment Program (hereinafter "VSPP") as an incentive for employees to leave their employment (doc. 11). In late 1996, a set of matrices was completed, and numerous employees were identified as unfunded and were placed in a "resource pool." (docs. 11 & 14). Once the employees were identified as unfunded,

Defendant contends that it began looking for funded positions for which the employees were qualified (doc. 11). There were discussions at Defendant's daily meetings throughout the reductions in force period about minority over-representation in the "resource pool" (docs. 1 & 14, Higgins dep. at 30–32).

At the time that the matrices were prepared, there were three employees working under Plaintiff's supervisor, Mr. Howell (doc. 11). In addition to Plaintiff, David Kirk and Donna Wells worked under Mr. Howell (docs. 11 & 14). In September 1996, Mr. Kirk accepted the VSPP and left the company (*Id.*, Howell dep. at 46). After Mr. Kirk left, Ms. Wells picked up some of his cleaning responsibilities (*Id.*, Howell dep. at 39–40). Ms. Wells is a caucasian female born August 14, 1948, and has worked at the Mound facility since 1977 (doc. 14, Wells dep. at 6–8). According to Defendant, Plaintiff received the lowest matrix score of these three individuals and accordingly her position was determined to be unfunded (doc. 11). Defendant contends that on or about March 5, 1997, Plaintiff left a voice mail message for Mr. Howell in which she stated that she was not interested in another job and would take the VSSP (*Id.*, Plaintiff's dep. at 37–38). Defendant maintains that in spite of Plaintiff's request, it proceeded to consider Plaintiff for other funded positions (*Id.*). According to Defendant, no position was found (*Id.*, Howell dep. at 126–27, Peterson dep. at 63). Plaintiff was laid off from her position on March 26, 1997 (*Id.*, Morris dep. at 42, Plaintiff's dep. at 20). Ms. Wells currently performs Plaintiff's former duties (doc. 14, Wells dep. at 6).

It is Plaintiff's assertion that she helped train Ms. Wells in many of the duties Ms. Wells later performed (doc. 14, Wells dep. at 39–40). Plaintiff asserts that she, like Ms. Wells was capable of performing material control duties (*Id.*, Wells dep. at 29). Plaintiff also contends that unlike Ms. Wells, she was not considered for laser

marking training although she had the ability to perform the job (*Id.*, Howell dep. at 58). In addition, Plaintiff contends that she approached the Equal Employment Officer to express concern about what she felt was her replacement by Ms. Wells (*Id.*, Brown dep. at 97). Plaintiff also maintains that she never had any performance problems and her job evaluations were always positive (*Id.*, Morris dep. at 109). Defendant does not dispute this assertion.

Plaintiff recalls being told by Defendant that the Cassini Mission would be completed in 2005 (*Id.*, Brown Dep. at 98). Plaintiff contends that she was given the impression that Defendant had adequate funding to support its employees through that date (doc. 14, Brown Dep. at 22).

This action was instituted on February 3, 1999 (doc. 1). Defendant filed a Motion for Summary Judgment (doc. 11); Plaintiff filed a Response (doc. 14); and Defendant filed a Reply (doc. 18).

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. *Guarino,* 980 F.2d at 410; *Carver v. Bunch,* 946 F.2d 451, 454–55 (6th Cir. 1991).

## DISCUSSION

The Parties' briefs analyze the age, gender and race discrimination claims together. Because these claims involve similar elements, the Court will also analyze them together.

The Age Discrimination in Employment Act, 29 U.S.C. § 623 (2000) declares that:

[i]t shall be unlawful for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

*Id.* Title VII of the Civil Rights Act of 1964 declares that:

It shall be an unlawful employment practice for an employer ... (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin

42 U.S.C. § 2000e–2 (2000).

Federal courts analyze race, gender, and age discrimination claims under the shifting burden framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Scott v. Goodyear Tire & Rubber Co.,* 160 F.3d 1121, 1126 (6th Cir.1998) (citing *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1081 (6th Cir.1994)); *see also Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 350 (6th Cir.1998).

Initially, if a plaintiff lacks direct evidence of discrimination, a plaintiff must establish a *prima facie* case of race or gender discrimination claim pursuant to Title 42 U.S.C. § 2000e by showing by a preponderance of the evidence that: (1) she was a member of a protected class; (2) she was discharged; (3) she was qualified for the position; and (4) she was replaced by a person outside the class. *See Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir.1992).

This framework has been modified somewhat in the case of age discrimination claims. *See O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 309, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). To establish a *prima facie* case age-based employment discrimination, the Plaintiff must demonstrate that: (1) she was over the age of 40; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a significantly younger employee. *See Barnhart,* 12 F.3d at 1390; *Ercegovich,* 154 F.3d at 350. *see also O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

All of these tests are also modified, somewhat, in the case of a work-force reduction. A company engages in a work-force reduction when business decisions cause it to eliminate the total number of positions. *See Barnes v. GenCorp, Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990). All of the relevant modifications to the *prima facie* tests for discriminatory discharge involve an analysis of the replacement for the discharged employee. *See O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *Mitchell v. Toledo Hospital,* 964 F.2d at 577. In the case of a true workforce reduction, there is no replacement to evaluate. A replacement employee is someone hired or reassigned to perform the plaintiff's duties. *See Barnes,* 896 F.2d at 1465. An employee is not replaced when another employee performs his duties in addition to his own. *See id.*

■ To make a *prima facie* age or race discrimination claim in a reduction in force situation, the plaintiff must put forward, in addition to the respective first three elements, "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes,* 896 F.2d at 1465. *Barnes* dealt with a reduction in force situation in an age discrimination case. This Court has been unable to find a published opinion in the Sixth Circuit dealing with a race discrimination claim involving a reduction in force. However, two district courts in this

Circuit have applied this fourth factor. *See Hines v. Elano Corp.,* No. C–3–96–226, 2000 WL 988527, at *5 (S.D.Ohio Mar.23, 2000) (holding that the Barnes *prima facie* test is applicable to race discrimination cases); *Mims v. Electronic Data Sys. Corp.,* 975 F.Supp. 1010, 1013 (E.D.Mich. 1997) (holding that the appropriate test in race discrimination cases is whether plaintiff has "come forward with additional direct, circumstantial, or statistical evidence that age was a determining factor in his job displacement"). In addition, this application is in line with a number of other circuits that have analyzed this type of case. *See Hughes v. Ortho Pharmaceutical Corp.* 177 F.3d 701, 705 (8th Cir.1999) (holding that plaintiff must "produce some additional evidence that race was a factor in their termination"); *Standard v. A.B.E.L. Serv., Inc.,* 161 F.3d 1318, 1331 (11th Cir.1998) (holding that plaintiff must produce "sufficient evidence from which a rational fact-finder could conclude that his employer intended to discriminate against him in making the discharge decision"). We find the analysis in these cases persuasive and apply this test to the issue before us.

Once a plaintiff has made a *prima facie* case, the burden switches to the defendant to articulate some legitimate, nondiscriminatory reason for the decision. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas,* the burden of production may shift from the plaintiff to the defendant, but the burden of persuasion remains with the plaintiff throughout the analysis. *See Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1390 (6th Cir.1993). If the defendant meets this burden, then the presumption created from the *prima facie* case drops out and the plaintiff has "the fair and full opportunity to demonstrate ... that the proffered reasons were not the true reason for the employment decision, but were a pretext for discrimination" *Texas Dept. of Comm. Affairs v.. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *See also St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citations omitted).

██ In analyzing Plaintiff's claims, we look first to whether Plaintiff has produced enough evidence to make out a *prima facie* case of discrimination. This is not intended to be an onerous burden on the Plaintiff. *See Burdine,* 450 U.S. at 251, 101 S.Ct. 1089. As a preliminary matter, there is no genuine dispute that Plaintiff meets the first three elements for presenting a *prima facie* case under *McDonnell Douglas* (docs. 11 & 14). Plaintiff is an African American female born in 1943 (doc. 1). This puts Plaintiff within the protected classes for race, gender and age discrimination claims. Second, neither party disputes that Plaintiff was discharged (docs. 1 & 2). Finally, the parties do not dispute that the Plaintiff was qualified for her position (*Id.*). This leaves the fourth element: whether Plaintiff has provided additional direct, circumstantial, or statistical evidence of discrimination?

For her argument, Plaintiff asserts that a substantially younger, less-qualified, caucasian employee was retained by Defendant (doc. 14). Donna Wells took over the duties of Plaintiff when Plaintiff was terminated (*Id.,* Wells dep. at 12). Ms. Wells is five years younger than Plaintiff (*Id.,* Wells Dep. at 6). Plaintiff asserts that Plaintiff has training that Ms. Wells lacks and has more experience in mulliwatt generator work (*Id.,* Hairston dep. at 37–38). In addition, Plaintiff trained Ms. Wells to perform certain duties (*Id.,* Howell dep. at 105–106; Wells dep. at 20–21). Plaintiff contends that this evidence creates a question of fact as to whether a less qualified member of a non-protected class was retained over Plaintiff (*Id.*). Defendant maintains that this evidence is insufficient to create a presumption of discrimination (doc. 11).

The Court agrees that this evidence is insufficient to create an inference of dis-

crimination. Plaintiff has offered no evidence indicating that she was more qualified for the needs of Defendant than Ms. Wells. The fact that a younger, caucasian employee was retained while Plaintiff was terminated, taken alone, is simply insufficient to establish discriminatory motives.

■ Plaintiff next asserts that she has satisfied her burden by presenting additional evidence that she was treated differently than comparable employees outside of the protected class (doc. 14) [1]. In support of her proposition, Plaintiff offers evidence consisting of an analysis of the employees retained as well as those terminated on March 26, 1997.

According to Plaintiff, of the 17 employees considered unfunded on March 26, 1997, ten were retained (doc. 14). Two of the seven employees terminated were African American females over the age of 40 (*Id.*, Morris Ex. 5). Seven of the ten employees retained were caucasian (*Id.*). Plaintiff then goes outside the unfunded group to point out that several caucasian women were retained over Plaintiff even though their matrix scores were lower than Plaintiff's, including Donna Wells, Sue Brindle and Pat Stidham (*Id.*). Next Plaintiff notes that six of the retained employees were males, including three caucasian men who were retained despite lower matrix scores (*Id.*, Bonelli Ex. 1, Howell Ex. 1). Finally, Plaintiff notes that all of the terminated employees had reached the age of 40, while three of the ten retained employees were not within the protected age class. Plaintiff concludes from these statistics that Plaintiff was treated differently than comparable non-protected employees (*Id.*).

Defendant maintains that these statistics do not establish a *prima facie* case of discrimination for several reasons. First, Defendant asserts that these statistics are from an insufficient sample to have any statistical meaning (doc. 18) *See Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 942 (6th Cir.1987). Defendant contends that it is Plaintiff's burden to present persuasive statistical evidence and this Plaintiff has failed to do. (*Id.*). Defendant maintains that when it combined statistics for both the February and March 1997 layoffs, the numbers demonstrate that there was no disparate impact on minorities (*Id.*). Defendant asserts that this discrepancy can be explained by the larger sample size (*Id.*).

Defendant offers evidence from its February 26, 1997 layoff to supplement the statistics presented by Plaintiff (doc. 18 at 15). In February 1997 there were sixteen employees in the resource pool labeled for termination (*Id.*). All sixteen of these employees were terminated (*Id.*) Only one of these employees was a member of a protected class (*Id.*). At the end of March 1997 there had been thirty-three employees who were considered unfunded, six of whom were members of a racial minority or 18%. Of the total number of employees terminated in the February and March 1997 layoffs, three were members of a racial minority. This equates to 13%. This is exactly the percentage of minorities

---

1. Plaintiff relies on *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998) for the proposition that the fourth prong of a *prima facie* discrimination case may be satisfied by showing that any less qualified, non-protected employees were retained (doc. 11 ). *See Bellian v. Bicron Corp.*, 69 Ohio St.3d, 517, 520, 634 N.E.2d 608, 611 (1994); *Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501, 575 N.E.2d 439 (1991). Defendant maintains that these cases are not applicable insofar as they did not deal with a reduction in force situation (doc. 18). It appears that *Kohmescher*, did deal with reduction in force

situation. *See Kohmescher*, 61 Ohio St.3d 501, 575 N.E.2d 439 (Holmes, J. dissenting) However, this case is not entitled to the broad reading that Plaintiff suggests. As discussed above, the Court believes that the ultimate inquiry must be whether Plaintiff has put forth any evidence which is probative of an improper motive. *See Barnes*, 896 F.2d at 1465. Whether a particular individual is treated better could certainly be indicative of discrimination. But the fact that any, non-protected employee was retained is not the standard.

in the total population (doc. 18). Neither of these numbers (18% of those unfunded, or 13% of those terminated) are substantially higher than the 13% that would be expected in any typical layoff.

Statistical proof, if unrebutted, can demonstrate that a defendant has engaged in a pattern of impermissible conduct toward a protected class as a group. *See Barnes,* 896 F.2d at 1465. The statistics must eliminate, however, the "most common nondiscriminatory explanations for the disparity." *Barnes,* 896 F.2d at 1466. Both the "methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination" *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 944 (1987). Statistical evidence

> does not differ greatly from other types of proof. . . . Statistics gain relevance in one of two ways: the statistics, standing alone, reasonably lead to a particular conclusion validated by human existence, or comparative statistics point out discrepancies in behavior that would cause the average person to scrutinize the employer's motives.

*Id.* at 944. In particular, statistical evidence must be derived from a sufficient sample size to demonstrate an inference of discrimination *See Id.*

■ Even assuming the statistics the Plaintiff produced are accurate, they still do not meet the fourth requirement for establishing a *prima facie* case for discrimination based on age, sex, or race for two reasons. As an initial matter, we doubt that the statistical evidence put forward is based on a sufficient sample to have any probative value. *See Simpson,* 823 F.2d at 943 (noting that the use of seventeen employee departures as a sample for statistical analysis was suspect). For example, even if all of the employees subject to termination were considered to be the sample in this case, the total number is seventeen.

Furthermore, even if the sample size were sufficient, the statistics are inconclu-

sive at best. The total percentage of minorities working for Defendant is 13% (doc. 18). Plaintiff has not articulated to the Court the significance of any of the statistics presented. Plaintiff has failed to present to the Court any analysis of these numbers demonstrating how they establish evidence of discrimination. In particular, Plaintiff has failed to demonstrate what statistics would be expected for an employer of Defendant's size. Instead, Plaintiff relies on the Court to determine the significance of the numbers presented to it. For all of the claims presented, Plaintiff has failed to present evidence of any methodology used in her analysis. Plaintiff has only provided a "snapshot" of Defendant's demographics. While this might be more persuasive if the statistics were more egregious, it is insufficient to carry Plaintiff's burden of production. As explained earlier, with the use of a larger sample size, the statistics are certainly more favorable to the Defendant.

Having reviewed this matter and the facts presented by the Parties, the Court finds that the statistics cited are from an insufficient sample to be probative of Plaintiff's case. Plaintiff has failed to show any additional evidence of race, gender, or age discrimination in order to establish a *prima facie* case. The Court determines that Plaintiff has presented insufficient evidence to carry her burden for her discrimination claim.

Nonetheless, even assuming that Plaintiff can make a *prima facie* case, summary judgment is still proper because Defendant has established a legitimate, nondiscriminatory reason for Plaintiff's termination. Defendant asserts that this termination was the result of a legitimate, nondiscriminatory reduction in force (doc. 11). According to Defendant, employees were assigned points in several categories including:

> 1) performance on specific tasks and responsibilities assigned to the individual;
> 2) knowledge of performance toward

meeting overall programmatic goals; 3) productivity; 4) team contribution; 5) performance rating from previous evaluation; 6) seniority; and 7) additional consideration for contributions outside the Testing area (doc. 14; Howell dep. Ex. 1). Defendant contends that Plaintiff was one of three employees under the supervision of Mr. Howell, Plaintiff's supervisor (*Id.*). Defendant also asserts that since Plaintiff was the lowest ranking member of the group, her position was deemed unfunded and she was ultimately terminated (*Id.*). Plaintiff does not dispute that this procedure took place, but instead contends that the procedure itself was subjective and allowed Defendant to use it as a pretext for discrimination (doc. 11).

The Court finds that Defendant has met its burden in establishing a valid non-discriminatory reason for Plaintiff's discharge. Plaintiff has put forth no proof of deficiencies in the procedure used by Defendant. Plaintiff instead relies on the flexibility that managers have in evaluating various components of the matrix combined with her statistics to argue that the procedure was a pretext for discrimination. The Court finds this unpersuasive. The Court concludes that the Defendant has met its burden of articulating a legitimate, non-discriminatory reason for Plaintiff's discharge.

This does not end our analysis, however. Plaintiff now has the opportunity to demonstrate that this proffered reason is not the actual reason for the discharge, but is a pretext for discrimination. Plaintiff may do this in one of three ways. *See Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). The Plaintiff may prove that: 1) the proffered reason has no basis in fact; 2) the proffered reason did not actually motivate the discharge; 3) the proffered reason was insufficient to motivate discharge. *See id.*

Plaintiff presents arguments under each of these categories. First, Plaintiff asserts that the proffered reason has no basis in

fact (doc. 14). In support of this proposition, Plaintiff maintains that Plaintiff was more experienced in certain duties than Ms. Wells, who was not terminated. Plaintiff asserts that the method used to evaluate employees for the resource pool was subjective (*Id.*, Hairston dep. at 36–37). According to Plaintiff, because Defendant has not proffered any objective reasons for Plaintiff's lower matrix score, the scores were used as a pretext for discrimination (*Id.*). Plaintiff also asserts that Defendant knew that minorities were over represented in the resource pool (doc. 14 at 16). Defendant does not dispute this fact, but asserts that it is irrelevant (doc. 18). Defendant maintains that its discussions add nothing in terms of evidence of pretext.

We agree. The fact that Defendant had discussions about possible over representation in the resource pool does not establish that it was intentionally conducting discriminatory firing. In addition, the fact that Plaintiff has offered some evidence of skills she possessed that Ms. Wells did not, does not demonstrate pretext. Plaintiff has offered no proof that these were the skills that Defendant would find useful in the future. Plaintiff has also failed to demonstrate that the matrix score was inaccurate in the skills and attributes that it did measure. Plaintiff also offers no evidence suggesting that the evaluation matrix used by the Defendants was invalid, other than to suggest that some of its component measurements were susceptible to subjective determinations. Plaintiff faults the employee matrix used by Defendant as "subjective", however, she offers no evidence indicating that this subjectivity was used as a pretext for discrimination. The fact that individual managers had flexibility in determining individual components of a matrix score, does not indicate discrimination. Accordingly, the Court finds that Plaintiff has not overcome Defendant's articulated reason for the discharge and has accordingly failed to demonstrate a pretext for discrimination.

Second, Plaintiff attempts to demonstrate pretext by showing that similarly situated employees with a lower matrix ranking were retained (doc. 14). Plaintiff provides a list of 12 employees labeled "technician" at the time of Plaintiff's discharge (*Id.*). Each of these employees had a lower matrix score than Plaintiff (*Id.*). Plaintiff maintains that because none of these employees were terminated the Defendant's proffered reason for termination is invalid (*Id.*). Plaintiff asserts that this provides a sufficient basis for a fact-finder to disbelieve Defendant's proffered reason for Plaintiff's termination. Defendant argues that Plaintiff has made no showing that these employees were indeed similarly situated to Plaintiff (doc. 14). Defendant has put forth evidence that these employees, while under the broad umbrella of "technician", were all performing different kinds of duties in different departments (*Id.*).

We agree that Plaintiff has offered no evidence that these employees were similarly situated to Plaintiff. The only evidence presented by the Plaintiff is that these employees were comparable is that they were all labeled technician. Plaintiff has put forth no evidence describing the job duties, qualifications or skills of these other employees. For these reasons, the Court finds that Plaintiff has failed to carry her ultimate burden of persuasion regarding Defendant's proffered reason for Plaintiff's termination.

The Court finds that there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. Having reviewed this matter, the Court concludes that the Plaintiff has failed to demonstrate a *prima facie* case of race, gender or age discrimination. In addition, Defendant has articulated a legitimate, non-discriminatory reason for the termination and Plaintiff has been unable to demonstrate that this proffered reason is a pretext for impermissible discrimination.

Accordingly, the Court hereby GRANTS Defendant's Motion for Summary Judgment (doc. 11). Plaintiff's federal claims are hereby DISMISSED WITH PREJUDICE. The Court will not retain jurisdiction of Plaintiff's pendant state-law claims. Therefore, Plaintiff's pendant state law claims are hereby DISMISSED WITHOUT PREJUDICE. Accordingly, the Final Pretrial Conference scheduled for November 2, 2000, is hereby VACATED.

SO ORDERED.