SUTTON, Circuit Judge.
Charlotte Beck sued her employer, Buckeye Pipeline Services Co., alleging that the company discriminated against her based on gender and age when it discharged her as part of a company-wide reduction in force. The district court granted summary judgment to Buckeye. We affirm.
I.
In spring 2009, Buckeye assembled ten company leaders as part of a “design team” to reform the company’s organizational structure. R. 28-4 at 2 (Page ID # 158). The new structure focused on decentralized, team-based leadership rather than centralized, top-down control, id. at 2-4 (Page ID # 158-60), and promoted “accountability, flexibility, adaptability, [and] teamwork” among employees. Id. at Z-i (Page ID # 159-60).
After revamping the company’s organization, the design team created a new system for evaluating employees. Id. at 3-4. The team assigned each employee two ratings: an “A” rating that assessed the employee’s “[s]kill [potential,” and a “B” rating that assessed the employee’s “[a]bility to [w]ork [i]n and [p]romote [t]he [n]ew [c]ulture,” which included things like whether the employee was “[a] good listener and communicator,” “willing to work in a team,” “proactive and accountable,” and able to “make good judgments about priorities without close supervision.” R.28-2 at 8-9 (Page ID # 151-52). The team required at least two people with knowledge of the employee to present their views and to “cite specific examples of behaviors that supported a proposed grade.” R.28^ at 4 (Page ID # 160). An employee could earn a score ranging from zero to four for each rating with four being the highest. Id. The matrix combined the scores by multiplying the A score by ten points and the B score by fifteen points and adding the two values together, creating one hundred potential points. Id. at 9 (Page ID # 152). The team decided that the company would not retain any employee who received fewer than sixty points. Id.
In late June and early July 2009, the design team split into smaller groups to conduct the employee evaluations. R.28-3 at 2-3 (Page ID # 155-56); R.28-21 at 88- *449 89 (Page ID # 1129-89). Five people— Carl Ostach, Rick Bishop, Roger Hatch, Mark Johnson and Bill Serra — evaluated the employees who worked at Buckeye’s Lima, Ohio locations, R.28-21 at 83 (Page ID # 1124), which included Beck, a twelve-hour operator at Buckeye’s Lima Station. Id. at 6 (Page ID # 162); R.28-12 at 49 (Page ID # 605). At that time, Beck, fifty years old, had worked at Buckeye for over sixteen years. R.28-1S at 17 (Page ID #760); R.28-14 at 2 (Page ID #764); R.28-4 at 6 (Page ID # 162). She was the only woman among the eight twelve-hour operators at Lima Station. R.29-1 at 127 (Page ID # 1317); R.28-21 at 33-34 (Page ID # 1074-75).
Three members of the five-person group — Ostach, Bishop and Johnson — provided information about Beck’s performance. R.28-21 at 100, 106, 110 (Page ID # 1141, 1147, 1151). Ostach described Beck as someone who “complained about the way things were scheduled, [and] complained about directions that the controllers were giving in Lima,” and who resisted the implementation of new safety programs. R.28-21 at 100-05 (Page ID # 1141-46). Bishop said that Beck “was not much of a team-player” because she frequently refused to fill in for other operators, and she had twice failed to address problems inherited from other operators, which had to be corrected after her shift. R.28-6 at 5-6 (Page ID # 175-76). Johnson said Beck “was not particularly cooperative with the Control Center, and ... was slow to respond to its requests.” R.28-3 at 3 (Page ID # 155). He also said that, “[r]ather than working with the Control Center to find solutions to problems, Ms. Beck tended to state that the problem was not her responsibility,” which Johnson thought meant Beck “likely would not thrive in the new environment, which placed a particularly high value on teamwork.” Id. Based on this information, the five-person group gave Beck an A score of two and a B score .of one, which added up to thirty-five points. R.28-2 at 5 (Page ID # 148). Because Beck’s score fell well below the sixty-point threshold for remaining at Buckeye, the company fired her (and 139 other employees) on June 20, 2009. R.28^4 at 6 (Page ID # 162). A younger, male employee with less experience was assigned to Beck’s position as a 12-hour operator.
Beck sued Buckeye, alleging gender and age discrimination under Ohio law. Ohio Rev.Code §§ 4112.02, 4112.99. The district court granted summary judgment to Buckeye.
II.
Ohio courts apply the federal burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to discrimination claims filed under Ohio law. Helmick v. Cincinnati Word Processing, Inc., 45 Ohio St.3d 131, 543 N.E.2d 1212, 1215 n. 2 (1989). For purposes of reviewing the district court’s summary judgment ruling, the parties agree that Beck has made a prima facie case and that Buckeye has offered a legitimate, non-discriminatory reason for firing Beck: the company-wide reduction in force. Appellant Br. at 13; Appellee Br. at 18. That puts the burden on Beck to show that Buckeye’s proffered rationale for firing her was a pretext for discrimination, Upshaw v. Ford Motor Co., 576 F.3d 576, 586 (6th Cir.2009), a not inconsiderable burden given that in reduction-in-force cases “the most common legitimate reasons for the discharge are the work force reductions” themselves. Barnes v. GenCorp, Inc., 896 F.2d 1457, 1465 (6th Cir.1990); see also Southworth v. N. Trust Sec. Inc., 195 Ohio App.3d 357, 960 N.E.2d *450 473, 480 (2011) (“[I]n a [reduction in force], qualified employees are going to be discharged”)- Acknowledging that a reduction in force would be a legitimate reason to discharge her, she claims nonetheless that “numerous circumstances tend to show that [her] termination was motivated by age and/or gender discrimination.” Appellant Br. at 20. We disagree.
Beck submits that the design team’s reliance on “subjective criteria” in selecting her for termination permits the inference that she was “singl[ed] out” because of her age and gender. Appellant Br. at 13. Subjective criteria, it is true, sometimes make it difficult to distinguish between lawful and unlawful employment actions, and they deserve “careful[] scrutin[y].” Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc., 690 F.2d 88, 93 (6th Cir.1982). But “flexibility in determining individual components of a matrix score does not indicate discrimination.” Browning v. Dep’t of the Army, 436 F.3d 692, 697 (6th Cir.2006) (quoting Brown v. EG & G Mound Applied Tech., Inc., 117 F.Supp.2d 671, 680 (S.D.Ohio 2000)). The question “is whether the subjective criteria were used to disguise discriminatory action.” Grano v. Dep’t of Dev. of Columbus, 699 F.2d 836, 837 (6th Cir.1983).
Beyond her general concern about subjective criteria, Beck does not challenge as discriminatory any of the specific criteria the design team used to evaluate her: whether an employee was “a good listener and communicatory ... willing to work in a team[,] ... accepts accountability!,] ... [and] works with speed, energy and efficiency.” R.28-2 at 9 (Page ID # 152). Nor could she. None of these criteria discriminates based on gender or age.
Beck instead argues that application of these criteria to her was a pretext for discrimination because the design team’s evaluation conflicted with the assessment of her immediate supervisor, Kevin Dans-by. Dansby was not a member of the design team, but Bishop solicited his opinion about the employees he supervised. Dansby, it is true, said Beck was a good employee. But he said the same thing about all of his charges. He “told [Bishop] ... everybody on the list that I thought were good performers.” R.31 at 105 (Page ID # 1524). And when “asked if [he] had to phase out some employees, who would [he] phase out[,] ... [he] said none of them,” because “they were all good performers and ... [he] wouldn’t phase out any employee.” Id. at 105-06 (Page ID # 1524-25). “You’re not being of much help here,” Bishop eventually responded. Id. at 108-10 (Page ID # 1527-29).
Dansby’s unwillingness to criticize any of his employees in connection with a reduction in force does not cast doubt on the veracity of the experiences that Ostach, Bishop and Johnson described when evaluating Beck. Despite her argument to the contrary, all three had personally worked with Beck. R.28-2 at 4-5 (Page ID # 147-148); R.28-6 at 2 (Page ID # 172); R.28-3 at 3 (Page ID # 155); cf. R.28-12 at 53 (Page ID # 609). They said she complained often, resisted direction, responded slowly, was uncooperative and was not a team player. R.28-21 at 100-11 (Page ID #1141-1152); R.28-2 at 4-6 (Page ID # 147-49); R.28-3 at 3 (Page ID # 155); R.28-6 at 5-6 (Page ID # 175-76). See Idemudia v. J.P. Morgan Chase, 434 Fed.Appx. 495, 505 (6th Cir.2011) (citing specific examples to support employer’s subjective evaluation). Dansby disagreed with these assessments at his deposition but never shared his contrary thoughts with Bishop before the team evaluated Beck. R.31 at 105-10, 127-28 (Page ID # 1524-29, 1546^17). Dansby’s satisfaction with Beck’s work under the old system at any rate does not prove she would succeed *451 under the new system. See Peters v. Lincoln Elec. Co., 285 F.3d 456, 474 (6th Cir.2002). The design team, and only the design team, was asked to decide what qualities to require of employees in Buckeye’s new management system.
Beck has one other objection to the team’s evaluation. She says the team knew Bishop had spoken to Dansby and expected Bishop’s evaluation comments to reflect Dansby’s opinion. By sharing an opinion that conflicted with Dansby’s, she says Bishop violated the team’s policies for conducting evaluations. Not true. The team understood Bishop would speak to Dansby, but did not expect him to be merely a conduit for Dansby’s opinion: in Ostach’s words, Bishop “would give his input based on what his knowledge was of the employee ... as well as what the area supervisor’s^ Dansby’s], input was.” R.28-21 at 84 (Page ID # 1125) (emphasis added). The fact that Bishop communicated a somewhat negative review to the team does not show, as Beck argues, that he provided “false information ... by claim[ing] that Dansby [said] Beck [w]as a complainer and not a team player.” Appellant Br. at 22. There is no evidence in the record to support a finding that Bishop told the team that Dansby believed that Beck was a complainer and not a team player. Bishop said Dansby “tended to be a high grader and was reluctant to provide critical comments about the employees under his supervision. At the same time, [he] was not able to refute the specific examples of behaviors that I cited to him.” R.28-6 at 5 (Page ID # 175). As a result, in presenting his own evaluation, Bishop was entitled to disregard Dansby’s opinion, which “did not have much influence in the scoring recommendations” Bishop made to the team. Id. Beck, to say nothing of every other employee under Dansby’s supervision, may wish that Bishop had
adopted Dansby’s opinion of her, but she cannot complain that he misrepresented it.
When all is said and done, the use of subjective evaluation criteria does not by itself show discrimination, particularly in a reduction in force case. The dissent’s thoughtful conclusion to the contrary relies primarily on the theory that the reduction in force did not actually motivate Beck’s discharge. See Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir.1994). To prevail under this theory, Beck “must show that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not” that Buckeye terminated her based on a pretext. Abdulnour v. Campbell Soup Supply Co., LLC, 502 F.3d 496, 503 (6th Cir.2007) (quotations omitted). But Beck has no evidence that Buckeye terminated women or older workers at a disproportionately high rate during the reduction in force; that Buckeye deviated from its normal use of subjective evaluation procedures; or that Bishop lied about Dansby’s comments. In the absence of any such evidence, the mere fact that Buckeye used subjective criteria cannot by itself establish pretext. Browning, 436 F.3d at 697.
III.
For these reasons, we affirm.